JAIDEEP VENKATESAN, SBN 211386
jvenkatesan@be-law.com
PETER SOSKIN, SBN 280347
psoskin@be-law.com
BERGESON LLP
111 N. Market Street, Suite 600
San Jose, California 95113
Telephone: (408) 291-6200
Facsimile: (408) 297-6000

Attorneys for Defendants
SECRET WATERFALL LLC,
LAUNCELOT A. DEVAULT, AND
TARAH A. UHRICH

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| RAINBOW S.p.A.,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>SECRET WATERFALL LLC,<br>LAUNCELOT A. DEVAULT,<br>TARAH A. UHRICH, STARLINE<br>MEDIA, INC., AND DAVID<br>NDALAMBA,<br><br>　　　　Defendant. | Case No. 5:25-0597-MRA(DTBx)<br><br>**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>Judge:　Hon. Monica Ramirez Almadani<br>Crtrm.:　9B<br>Date:　March 17, 2026<br>Time:　10:00 a.m. |

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................. 1

II. RAINBOW'S CLAIMS ......................................................... 2

    A. The Allegedly Infringing Materials .................................. 2

III. APPLICABLE LEGAL STANDARD ...................................... 2

    A. Motion To Dismiss Under Rules 8 and 12(b)(6) .................. 2

    B. Motion to Dismiss under Rule 12(b)(1) .............................. 3

IV. MOTION TO DISMISS ARGUMENT ...................................... 4

    A. The TAC Is an Impermissible "Shotgun" Pleading ............. 4

        1. Rainbow's Improper Incorporation By Reference ......... 5

        2. Plaintiff's Failure to Distinguish Specific Conduct As Against Each Defendant .............................................. 6

        3. The Improper Trademark-Related Counts (67–72) ....... 7

    B. Rainbow Is Not Entitled to Injunctive Relief for Any of Its Counts ....................................................................... 9

    C. Counts 14 and 16 Lack Factual Allegations of Infringement. .............. 10

    D. Rainbow's Episode-Related Infringement Counts (1–49) Are Not Substantially Similar to the Allegedly Infringing Works ................... 11

    E. Rainbow's Episode-Related Infringement Counts (1–49) Assert Duplicate, Derivative Copyrights ........................... 14

    F. Counts 68 Should Be Dismissed Because Rainbow Alleges No Fraudulent Conduct and Is Not Entitled to An Injunction .................. 22

        1. Rainbow Fails to Allege Fraud with Particularity ........ 22

        2. Removing Fraud Claims from Count 68 Eliminates Rainbow's Ability to Recover Damages. ..................... 23

        3. Rainbow's Allegations Preclude Any Injunction ......... 23

    G. Rainbow's Trademark Infringement Claims Should Be Dismissed ...................................................................... 23

        1. Rainbow Alleges no Infringement of its Registered Trademarks .............................................................. 24

        2. Rainbow's Common Law Trademark Theory Should Be

i

1         Dismissed. .................................................................................... 24

2            a.    *The Allegedly Infringing Marks Have Artistic Relevance.* .......................................................................... 26

3            b.    *There are No Relevant Misleading Statements.* ............... 26

4
    H.    Rainbow's Trademark Dilution Claims (Counts 69 and 72) Are
5         Deficient ........................................................................... 27

6 V.     CONCLUSION ......................................................................... 28

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# <u>TABLE OF AUTHORITIES</u>

2
**Page(s)**

3
**Federal Cases**

4

5 *AAA, Inc. v. AAA Auto Body & Repair, Inc.,*
   2015 U.S. Dist. LEXIS 25172 (N.D. Cal. Feb. 9, 2015)....................................28

6
7 *Adobe Sys. v. Childers,*
   2011 U.S. Dist. LEXIS 14534 (N.D. Cal. Feb. 14, 2011)...................................6

8
9 *Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ....................................................................................2, 3

10 *Bell Atl. Corp. v. Twombly,*
11   550 U.S. 544 (2007) ........................................................................................2

12 *Berkic v. Crichton,*
   761 F.2d 1289 (9th Cir. 1985)........................................................................14
13

14 *Blizzard Entm't, Inc. v. Lilith Games (Shanghai) Co.,*
   149 F.Supp.3d 1167 (N.D. Cal. 2015)............................................................11
15

16 *Bly-Magee v. California,*
   236 F.3d 1014 (9th Cir. 2001) .......................................................................23
17

18 *Brown v. Elec. Arts, Inc.,*
   724 F.3d 1235 (9th Cir. 2013) .......................................................................26
19

20 *Cafasso v. Gen. Dynamics C4 Sys.,*
   637 F.3d 1047 (9th Cir. 2011) .........................................................................4

21
22 *Caruso v. Hill,*
   2020 U.S. Dist. LEXIS 125709 (E.D. Cal. July 15, 2020)................................5

23 *Collier v. McKay,*
24   761 F. Supp. 3d 1300 (C.D. Cal. 2025).......................................................3, 10

25 *Daniels v. Saddleback Valley Unified Sch. Dist.,*
   2024 U.S. Dist. LEXIS 204292 (C.D. Cal. Nov. 8, 2024) ................................9
26

27 *Davidson v. Kimberly-Clark Corp.,*
   889 F.3d 956 (9th Cir. 2018) .........................................................................23
28

iii

*Evo Brands, LLC v. Al Khalifa Grp. LLC*,
    657 F. Supp. 3d 1312 (C.D. Cal. 2023) ........................................................24, 25

*Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991) ...............................................................................................11

*Friedman v. Live Nation Merch., Inc.*,
    833 F.3d 1180 (9th Cir. 2016) ...............................................................................15

*Funky Films, Inc. v. Time Warner Entm't Co. LP*,
    462 F.3d 1072 (9th Cir. 2006) ...............................................................................12

*George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd.*,
    2022 U.S. Dist. LEXIS 215141 (S.D. Cal. Nov. 29, 2022)........................4, 5, 6

*Gordon v. Drape Creative, Inc.*,
    909 F.3d 257 (9th Cir. 2018) ..................................................................................26

*Haas v Automation, Inc. v. Steiner*,
    750 F. Supp. 3d 1107 (C.D. Cal. 2024)................................................................27

*Hara v. Netflix, Inc.*,
    2025 U.S. App. LEXIS 18690 (9th Cir. July 28, 2025) ....................................26

*Jada Toys, Inc. v. Mattel, Inc.*,
    518 F.3d 628 (9th Cir. 2008) ..................................................................................28

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...............................................................................23

*Klein Elecs., Inc. v. Boxwave Corp.*,
    2011 U.S. Dist. LEXIS 69525 (S.D. Cal. June 17, 2011) .................................29

*Lodestar Anstalt v. Bacardi & Co.*,
    2019 U.S. Dist. LEXIS 228304 (C.D. Cal. July 3, 2019) .................................24

*Martin v. Sephora USA, Inc.*,
    2023 U.S. Dist. LEXIS 55930 (E.D. Cal. Mar. 30, 2023)...................................5

*Martinez v. Navarro*,
    2025 U.S. Dist. LEXIS 153523 (E.D. Cal. Aug. 7, 2025) ..................................9

*Mason v. Cnty. of Orange*,
    251 F.R.D. 562 (C.D. Cal. 2008).............................................................................3

iv

*Mattel, Inc. v. MCA Recs., Inc.*,
    296 F.3d 894 (9th Cir. 2002) ............................................................................ 24

*McHenry v. Renne*,
    84 F.3d 1172 (9th Cir. 1996) ............................................................................ 3

*MultiCraft Imps., Inc. v. Mariposa USA, Inc.*,
    2017 U.S. Dist. LEXIS 239606 (C.D. Cal. Sep. 14, 2017) ............................... 11

*Nitschke v. Cty. of San Diego*,
    2024 U.S. Dist. LEXIS 110039 (C.D. Cal. Jun. 21, 2024) ............................ 4, 7

*Novalogic, Inc. v. Activision Blizzard*,
    41 F. Supp. 3d 885 (C.D. Cal. 2013) ........................................................ 27, 28

*O'Shea v. Littleton*,
    414 U.S. 488 (1974) .......................................................................................... 4

*Opperman v. Path, Inc.*,
    84 F. Supp. 3d 962 (N.D. Cal. 2015) ........................................................ 3, 4, 9

*Punchbowl, Inc. v. Aj Press, LLC*,
    90 F.4th 1022 (9th Cir. 2024) ......................................................................... 26

*Rentmeester v. Nike, Inc.*,
    883 F.3d 1111 (9th Cir. 2018) .................................................................... 11, 12

*Rogers v. Grimaldi*,
    875 F.2d 994 (2d Cir. 1989) ...................................................................... 26, 28

*Schmidt v. Herrmann*,
    614 F.2d 1221 (9th Cir. 1980) .......................................................................... 7

*Sollberger v. Wachovia Sec., LLC*,
    2010 U.S. Dist. LEXIS 66233 (C.D. Cal. June 30, 2010) .............................. 4, 6

*Tangle, Inc. v. Aritzia, Inc.*,
    125 F.4th 991 (9th Cir. 2025) .................................................................... 11, 12

*United Tactical Sys., LLC v. Real Action Paintball, Inc.*,
    143 F. Supp. 3d 982 (N.D. Cal. 2015) ............................................................ 10

*Untied States v. United Healthcare Ins. Co.*,
    848 F.3d 1161 (9th Cir. 2016) ......................................................................... 24

*Walt Disney Co. v. Powell*,
    897 F.2d 565 (D.C. Cir. 1990)................................................................15

*Weiland v. Palm Beach Cnty. Sheriff's Off.*,
    792 F.3d 1313 (11th Cir. 2015)..............................................................5

**State Cases**

*Bank of the West v. Superior Court*,
    2 Cal. 4th 1254 (1992)..........................................................................24

**Federal Statutes**

17 U.S.C. § 103(b) ....................................................................................14

17 U.S.C. § 504(c)(1) ...............................................................................15

Lanham Act.....................................................................................24, 26, 28

Lanham act § 43(a) ...................................................................................26

**Rules**

Fed. R. Civ. Proc. 8.........................................................................2, 3, 5, 7, 9

Fed. R. Civ. Proc. 8(a) and 10(b).................................................... 1, 4, 5, 7

L.R. 11-6.1 ................................................................................................30

Rule 9(b) ...................................................................................................23

Rule 12(b)(6)................................................................................... 2, 3, 9

**Constitutional Provisions**

First Amendment ..............................................................................1, 26, 28

third amendment ........................................................................................1

SECRET WATERFALL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS PROCEEDINGS, Case No. 5:25-0597-MRA(DTBx)

I.       **INTRODUCTION**

Defendants Secret Waterfall LLC ("Secret"), Launcelot A. Devault ("Devault"), Tarah Uhrich ("Uhrich") (collectively "Secret Defendants", Devault and Uhrich together are "Individual Defendants") move to dismiss the Third Amended Complaint ("TAC", Dkt. 32) of Plaintiff Rainbow S.p.A ("Rainbow"), which alleges they[1] infringe copyrights and trademarks of Rainbow's Winx Club® animated TV series through the online game "Royale High" on the Roblox online gaming platform ("Roblox"). *See* e.g. TAC ¶¶ 1–4.

Rainbow's excessive TAC (380 pages, 1,350 paragraphs, 72 counts, 97 exhibits) is an impermissible "shotgun" pleading which fails to comply with Federal Rules of Civil Procedure 8(a) and 10(b) by obscuring specific allegations against Individual Defendants, and the intellectual property rights purportedly infringed, burdening the Court and Secret Defendants.

The TAC's defects include:

- Rainbow alleges no facts establishing personal liability;
- Rainbow lacks standing to seek injunctions;
- Rainbow's copyright claims lack a factual basis and are improperly duplicative;
- The unfair competition claims lack a basis for recovery;
- Rainbow does not allege fraud with particularity;
- The trademark infringement claims are prohibited by the First Amendment; and
- The trademark dilution claims are unsupported by factual allegations;

Rainbow's fourth complaint (and third amendment) remains insufficient. Therefore, Secret Defendants respectfully request that the Court dismiss the TAC.

---

[1] Additional defendants are Starline Media, Inc. and David Ndalamba.

## II.    RAINBOW'S CLAIMS

Rainbow, a "brand licensing company," allegedly owns trademarks and copyrights related to Winx Club®, a fantasy series about school-aged fairies. TAC ¶¶ 2, 16–20. Individual Defendants co-own Secret, which develops Royale High, an online fantasy high school-themed roleplaying and dress-up game on Roblox. *Id.* ¶¶ 1–3, 6–8, 13–14, 22.

Rainbow's kitchen sink TAC is confusing and defies reasonable evaluation. After hundreds of "Background" allegations (¶¶ 16–309), Rainbow asserts 66 nearly identical copyright infringement counts, distinguished only by registration number. Rainbow also asserts several claims derivative of trademark infringement claims. Each of the 72 counts incorporates all preceding allegations and contains only boilerplate allegations.

### A.    The Allegedly Infringing Materials

Rainbow's allegations against defendants rely on third-party screenshots from outdated content from platforms like Reddit, YouTube[2], TikTok, and Twitch, dating no earlier than 2023 (*see id.* ¶¶ 26, 54, 63, 66, 75, 79, 83, 88, 90, 93); *See* Request for Judicial Notice, filed herewith. No allegations describe Royale High as it existed at the time of Rainbow's original complaint. Indeed, Rainbow alleges the infringing content was removed from Roblox in 2023. *Id.* ¶¶ 24, 26–27.

## III.    APPLICABLE LEGAL STANDARD

### A.    Motion To Dismiss Under Rules 8 and 12(b)(6)

Under Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. 9*, 550 U.S. 544, 570 (2007). A claim is only plausible if it has "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must accept well-pleaded factual allegations as true, but they

---

[2] One video is marked "unavailable" as private. *See* footnotes 34, 36, 45–48.

1  need not accept legal conclusions as true. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*,

2  550 U.S. at 555). However, "[t]he Court is 'not required to accept as true allegations

3  that contradict exhibits attached to the Complaint or matters properly subject to

4  judicial notice,' nor must it accept 'allegations that are merely conclusory,

5  unwarranted deductions of fact, or unreasonable inferences.'" *Collier v. McKay*, 761

6  F. Supp. 3d 1300, at 1308 (C.D. Cal. 2025) (citing *Seven Arts Filmed Ent., Ltd. v.*

7  *Content Media Corp. PLC*, 733 F.3d 1251, 1254 (9th Cir. 2013)); *see also Iqbal*,

8  556 U.S. at 678–679.

9      Fed. R. Civ. Proc. 8 ("Rule 8") "applies to good claims as well as bad" and a

10  violation "is a basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*,

11  84 F.3d 1172, 1179 (9th Cir. 1996). Rule 8 contains a "requirement of simplicity,

12  directness, and clarity." *Id.*, at 1178. "Unless cases are pled clearly and precisely,

13  issues are not joined, discovery is not controlled, the trial court's docket becomes

14  unmanageable, the litigants suffer, and society loses confidence in the court's ability

15  to administer justice." *Mason v. Cnty. of Orange*, 251 F.R.D. 562, 563–564 (C.D.

16  Cal. 2008) (quoting *Anderson v. Dist. Bd. of Trustees of Cent. Fla. Cmty. Coll.*, 77

17  F.3d 364, 367 (11th Cir. 1996)). "As the word 'Rule' implies, Rule 8 is not merely

18  aspirational; if a complaint does not comply with the Rule, it may be stricken."

19  *Mendez*, 182 F. Supp. 2d at 433.

20      **B.    Motion to Dismiss under Rule 12(b)(1)**

21      A complaint may be dismissed for lack of jurisdiction under Fed. R. Civ.

22  Proc.  12(b)(1). *Opperman v. Path, Inc.*, 84 F. Supp. 3d 962, 974 (N.D. Cal. 2015).

23  A court "must dismiss [a] claim for lack of jurisdiction" if "the Court finds that a

24  plaintiff's claim does not meet the Article III case-or-controversy requirement." *Id.*

25      To establish standing, a plaintiff must establish that it has "suffered an 'injury

26  in fact'—an invasion of a legally protected interest that is (a) concrete and

27  particularized, and (b) actual or imminent. *Id.*, at 987, citing *Lujan v. Defenders of*

28  *Wildlife*, 504 U.S. 555, 560 (1992). A plaintiff cannot show an "injury in fact"

3

1   where it "has not alleged 'a real or immediate threat' that he or she will be wronged

2   again; without such an allegation." *Opperman*, 84 F. Supp. 3d, at 988 (citing *Los*

3   *Angeles v. Lyons*, 461 U.S. 95, 111 (1983)). Allegations of past illegal conduct does

4   not mean there is a "present case or controversy regarding injunctive relief." *O'Shea*

5   *v. Littleton*, 414 U.S. 488, 495–496 (1974).

6   **IV.    MOTION TO DISMISS ARGUMENT**

7       **A.    The TAC Is an Impermissible "Shotgun" Pleading**

8         Rainbow's TAC is an impermissible "shotgun pleading." "Shotgun pleadings

9   … overwhelm defendants with an unclear mass of allegations and make it difficult

10  or impossible for defendants to make informed responses to the plaintiff's

11  allegations. They are unacceptable." *Sollberger v. Wachovia Sec., LLC*, 2010 U.S.

12  Dist. LEXIS 66233, at *11 (C.D. Cal. June 30, 2010). They "violate Rule 8(a)(2)'s

13  'short and plain statement requirement.'" *Nitschke v. Cty. of San Diego*, 2024 U.S.

14  Dist. LEXIS 110039, at *7 (C.D. Cal. Jun. 21, 2024) (citing *Weiland v. Palm Beach*

15  *Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320–23 (11th Cir. 2015). "[A] plaintiff who

16  engages in shotgun pleading abdicates its duty under Rule 8(a)(2) to provide a 'short

17  and plain statement of the claims showing that the pleader is entitled to relief,' and

18  leaves it to the defendant (and the court) to piece together the allegations and

19  claims—as though they comprise a puzzle to be solved—in order to discern

20  the nature and factual basis of the claim of which defendant stands accused."

21  *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd.*, 2022 U.S. Dist. LEXIS

22  215141, at *40–41 (S.D. Cal. Nov. 29, 2022). The Ninth Circuit has acknowledged

23  that the "district courts are busy enough without having to penetrate a tome

24  approaching the magnitude of *War and Peace* to discern a plaintiff's claims and

25  allegations." *Cafasso v. Gen. Dynamics C4 Sys.*, 637 F.3d 1047, 1059 (9th Cir.

26  2011). That is exactly what Rainbow has filed here.

27        There are "'four rough types or categories of shotgun pleadings.'" *Nitschke*,

28  2024 U.S. Dist. LEXIS 110039, at *8. (Quoting *Weiland*, 792 F.3d at 1321.) The

4

TAC meets three as (1) it "contain[s] multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; and (3) it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Weiland*, 792 F.3d at 1321–1323.

"[D]ismissal for failure to satisfy Rule 8 is proper" even "if the factual elements of a cause of action are present but are scattered throughout the complaint and not organized into a 'short and plain statement of the claim.'" *Martin v. Sephora USA, Inc.*, 2023 U.S. Dist. LEXIS 55930, at *14 (E.D. Cal. Mar. 30, 2023).

### 1. Rainbow's Improper Incorporation By Reference

A complaint "may not use the improper expedient of simply incorporating by reference all prior paragraphs, be they supportive or relevant to the cause of action or not, since such a practice does not provide adequate notice for purposes of Rule 8." *Caruso v. Hill*, 2020 U.S. Dist. LEXIS 125709, at *30 (E.D. Cal. July 15, 2020).

The 380-page, 1,350 paragraph TAC is an improper shotgun pleading because it indiscriminately incorporates by reference 309 background paragraphs (over 250 pages) into all 72 counts, with each count incorporating all preceding counts. Defendants and the Court must go back up through the TAC to parse out specific material that Rainbow contends relates to each count. It is unreasonably difficult to discern which specific acts are alleged against which defendant or which intellectual property rights are purportedly infringed, and how. *See* Fed. R. Civ. P. 8(a), 10(b). This alone warrants dismissal. *See George*, 2022 U.S. Dist. LEXIS 215141, at *41–42 (incorporation by reference of 218-paragraph, 54-page facts section into each count "incorporates large swaths of information in the Statement of Facts that does not bear at all upon the merits of the underlying claim" and "independently dooms"

5

1 all seven counts.) Such a "shotgun pleading deprives Defendants from knowing the

2 factual bases of each of the causes of actions lodged against them, particularly

3 considering the sheer volume of facts incorporated by reference in" each count. *Id.*,

4 at 41.

5    Rainbow exacerbates the difficulty of evaluating its claims by having each

6 incorporate nearly 300 background paragraphs, most irrelevant to any given count,

7 while omitting specific allegations in each count. For example, the TAC vaguely

8 refers to characters (e.g., "this character," "Bloom") without copyright numbers and

9 describes elements (e.g., "distinctive wings") without clear preceding context or

10 reference to enable the reader to understand or why such content may infringe (see

11 e.g., TAC ¶¶ 39, 43, 62).

12    Because of the extreme difficulty in evaluating and responding to the claims

13 as drafted, Secret Defendants request that the Court dismiss the TAC.

14        2.    <u>Plaintiff's Failure to Distinguish Specific Conduct As Against</u>

15              <u>Each Defendant</u>

16    The TAC is also a shotgun pleading by using "the omnibus term 'Defendants'

17 throughout [the TAC] by grouping defendants together without identifying what the

18 particular defendants specifically did wrong." *Sollberger*, 2010 U.S. Dist. LEXIS

19 66233, at *12. Rainbow lumps all defendants together for every material allegation.

20 This fails to delineate conduct or liability attributable to individual defendants

21 versus entity defendants. For instance, despite alleging that Secret is an LLC and

22 Devault and Uhrich are its owners (TAC ¶¶ 6–8), the TAC purports to apply equal

23 liability to all three Secret Defendants without alleging facts establishing that either

24 Individual Defendant is the "'moving active conscious force behind the [company's]

25 infringement'" as required to establish liability for an individual defendant. *Adobe*

26 *Sys. v. Childers*,  2011 U.S. Dist. LEXIS 14534, at *18 (N.D. Cal. Feb. 14, 2011)

27 (citing *Novell, Inc. v. Unicom Sales, Inc.*, 2004 U.S. Dist. LEXIS 16861, at *55-56

28 (N.D. Cal. Aug. 17, 2004). Notwithstanding Rainbow's allegations that the

6

1  defendants together were involved in the "creation, development, release, and

2  commercialization of Royale High," Rainbow does not allege that Individual

3  Defendants involvement in the game had anything to do with including its allegedly

4  infringing elements.

5      Such lumping together of defendants "complicates the Court's efforts to

6  understand which factual allegations support which claims and against which

7  defendant. Accordingly, dismissal of the [TAC] in its entirety is warranted

8  under Rule 8(a)." *Nitschke*, 2024 U.S. Dist. LEXIS 110039, at *7 (120 page, 573

9  paragraph complaint which incorporated all prior allegations by reference, and

10  where all 19 claims "are asserted against all defendants with no indication as to

11  which defendant was responsible for which acts or omissions" "fails to give fair

12  notice to Defendant of the claims against it. As such Plaintiff's FAC fails to comply

13  with Rule 8(a)." *Id.*, at *7, 9).

14      The TAC should be dismissed because Rainbow violates Rule 8 by broadly

15  grouping Secret Defendants' conduct and failing to plead facts establishing

16  individual liability.

17          3.    The Improper Trademark-Related Counts (67–72)

18      Rainbow's trademark-related claims (Counts 67–72) are likewise improper

19  shotgun pleadings because they allege undifferentiated wrongful conduct relating to

20  multiple, unspecified trademarks and fail to distinguish what conduct or material

21  applies to which trademark. This is evidenced by inconsistent descriptions and open-

22  ended phrasing used across the counts. *See Schmidt v. Herrmann*, 614 F.2d 1221,

23  1224 (9th Cir. 1980) (upholding a Rule 8(a) dismissal of "confusing, distracting,

24  ambiguous, and unintelligible pleadings"). These counts address Rainbow's claims

25  related to Secret Defendants' alleged use of Rainbow's registered and common law

26  trademarks, but fails to clearly describe the alleged trademarks. Rainbow never

27  specifies the specific marks that qualify as the purported "Common Law Marks."

28  TAC ¶ 35. Rainbow then incorporates that vague description into the definition of

7

"Winx Club Trademarks," which are the foundation for Rainbow's count Nos. 67 and 68. *See id.* ¶¶ 1237–1238, 1252. Rainbow then uses entirely different vague definitions to describe the alleged trademarks for Counts 69 through 72. *See id.* ¶¶ 1272, 1294, 1314, 1333 (stating in non-consistent language, that the "trademarks" or "famous marks" that "include among other things," "characters, and scenes from the Winx Club animated series" and the "trademark WINX CLUB and corresponding logo.")

Furthermore, Rainbow ambiguously defines the term "Common Law Marks," which it purports to include along with certain registered trademarks. Rainbow alleges that it "owns common law trademark rights in the visual depictions of each of its Winx Club characters Aisha, Bloom, Flora, Musa, Stella, and Tecna, as described and shown herein (Rainbow's Common Law Marks)." *Id.* ¶ 35. But Rainbow never defines or articulates the "Common law Marks" so Secret Defendants could know which marks constitute those Common Law Marks much less understand the alleged infringement.

Rainbow uses this term only three times in the TAC—first, in its "definition" of the term and as an element within the definition of "Winx Club Trademarks," which, as shown above, is not consistently used to describe the specific trademarks in each count. *Id.* ¶¶ 34, 1237 respectively. The TAC's only other use of this term is in conclusory allegation that Defendants' alleged use of the Common Law Marks is "likely to cause, and has actually caused, confusion by consumers as to the origin of the goods and services and as to affiliation, connection, or association of Defendants with Plaintiff, or as to the origin, sponsorship, or approval of Defendants' products and services." *Id.* ¶ 35.

Not only does Rainbow fail to adequately identify the alleged trademarks, Rainbow purports to lump all of them into each trademark-related count, all while failing to describe any conduct related to any mark that may render any defendant liable. *See* TAC ¶¶ 1237, 1252, 1271–1272, 1293–1294, 1313–1314, 1332–1333.

8

"Rule 8 requires that a complaint clearly establish the claims and parties such that a defendant would have 'no difficulty in responding to the claims with an answer and/or with a Rule 12(b)(6) motion to dismiss.'" *Daniels v. Saddleback Valley Unified Sch. Dist.*, 2024 U.S. Dist. LEXIS 204292, at *17 (C.D. Cal. Nov. 8, 2024) (citing *Hearns v. San Bernardino Police Dep't*, 530 F.3d 1124, 1131–32 (9th Cir. 2008). These counts violate Rule 8 as they are impermissibly "vague and conclusory" and make it unreasonably difficult to respond to Rainbow's trademark-related counts. *See Martinez v. Navarro*, 2025 U.S. Dist. LEXIS 153523, at *2 (E.D. Cal. Aug. 7, 2025).

Rainbow fails to adequately identify the specific trademarks and particular conduct of each defendant related to those marks, hindering Secret Defendants' ability to respond and the Court's ability to assess trademark protection. Counts 67 through 72 should be dismissed.

**B.      Rainbow Is Not Entitled to Injunctive Relief for Any of Its Counts**

Rainbow's allegations establish that it lacks Article III standing for injunctive relief because there is no "real or immediate threat" of any wrongdoing. *Opperman*, 84 F. Supp. 3d, at 988 (citing *Los Angeles*, 461 U.S., at 111). Without such threat, Rainbow lacks any "injury in fact" to support Article III standing for injunctive relief. *Id.*

Rainbow alleges the following in *each* count: "Upon information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court." Moreover, Rainbow alleges "on information and belief" that allegedly infringing content "appears in … Royale High" (TAC ¶ 66), and that copyrighted content "appear(s), or did appear in [Defendants'] Royale High Game." *Id.* ¶¶ 78, 82, 87, 92, 101, 104, 107, 110, 116, 120, 123. These allegations purporting to refer to ongoing infringement or a threat of infringement are not plausible. "[A]llegations made 'upon information and belief are appropriate where (1) the support for the claims turns on the content of records held by the defendants, or (2) where there is other

9

factual information elsewhere in the complaint upon which the allegations are based." *United Tactical Sys., LLC v. Real Action Paintball, Inc.*, 143 F. Supp. 3d 982, 1017 (N.D. Cal. 2015)  (internal quotation marks omitted) (citing *Cisco Sys. v. STMicroelectronics, Inc.*, 2015 U.S. Dist. LEXIS 71958, 2015 WL 3488923, at *4 (N.D. Cal. June 2, 2015)).

Rainbow not only lacks factual information to support Rainbow's ongoing infringement theory, its allegations *expressly refute it*. Upon filing its original March 5, 2025 complaint, Rainbow knew the allegedly infringing content had been removed from Royale High, and had no reason to believe any remained. TAC ¶¶ 26–27 (discussing discovery and removal of allegedly infringing content in May and August 2023).  Rainbow presents no allegation of infringing content on Royale High after August 2023.

Rainbow's "information and belief" allegations are not based on information that "turns on content of records held by the defendants." They are focused on the publicly available Royale High—allegedly one of Roblox's "most popular games." TAC ¶ 23. Yet Rainbow offers no examples of the game as it existed on the date of Rainbow's original complaint, despite filing a year and a half <u>after</u> the allegedly infringing content was removed.

Because Rainbow's information and belief allegations are not plausible, Rainbow fails to allege any plausible theory of real or immediate threat of wrongdoing for any of its 72 counts.

C.    <u>Counts 14 and 16 Lack Factual Allegations of Infringement.</u>

Counts 14 and 16, alleging infringement of Registration Nos. PA0002519603 and PA0002519638 (the "Unpleaded Copyrights"), must be dismissed because Rainbow alleges no facts that can establish infringement. To state a copyright infringement claim, a plaintiff must plead *inter alia* "'copying of constituent elements of the work that are original.'" *Collier*, 761 F. Supp. 3d, at 1308 (quoting *Feist Publ'ns., Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)). A

10

1  complaint that does not allege even representative acts of infringement fails to

2  provide notice as a matter of law. *See MultiCraft Imps., Inc. v. Mariposa USA, Inc.*,

3  2017 U.S. Dist. LEXIS 239606, at *9 (C.D. Cal. Sep. 14, 2017); *see also Blizzard*

4  *Entm't, Inc. v. Lilith Games (Shanghai) Co.*, 149 F.Supp.3d 1167, 1088–1089 (N.D.

5  Cal. 2015).

6      Even accounting for the preceding hundreds of pages of factual allegations,

7  however, Rainbow alleges no fact describing any alleged infringement of the

8  Unpleaded Copyrights. Without such facts, Rainbow fails to state a claim and Count

9  Nos. 14 and 16 should be dismissed.

10      **D.   Rainbow's Episode-Related Infringement Counts (1–49) Are Not**

11          **Substantially Similar to the Allegedly Infringing Works**

12      For counts 1–49, Rainbow fails to allege facts to establish copyright

13  infringement as required by *Twombly* and *Iqbal*. To establish infringement, Rainbow

14  must prove that Secret Defendants have copied the "constituent elements of the

15  work that are original." *Feist Publications*, 499 U.S., at 361. The Ninth Circuit has

16  made it "explicit" that this copying element has "two distinct components: 'copying'

17  and 'unlawful appropriation'." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th

18  Cir. 2018) (overruled on other grounds in *Skidmore v. Led Zeppelin,* 952 F.3d 1051

19  (9th Cir. 2020)). "To establish unlawful appropriation, a plaintiff must demonstrate

20  that the allegedly infringing work and the copyrighted expression 'share substantial

21  similarities.'" *Tangle, Inc. v. Aritzia, Inc.*, 125 F.4th 991, 997 (9th Cir. 2025)

22  (emphasis in original) (citing  *Skidmore,* 952 F.3d at 1064 ). The Ninth Circuit uses

23  a "two-part test to determine whether the defendant's work is substantially similar to

24  the plaintiff's copyrighted work." *Skidmore*, 952 F.3d at 1064. The objective,

25  "extrinsic test, compares the objective similarities of specific expressive elements in

26  the two works." *Id.* "[T]he intrinsic test, 'test[s] for similarity of expression from the

27  standpoint of the ordinary reasonable observer, with no expert assistance.'" *Id.*,

28  citing *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 637 (9th Cir. 2008). "Both tests

11

1  must be satisfied for the works to be deemed substantially similar." *Id.* "At the

2  pleading stage, a court may" apply the extrinsic test. *See Tangle*, 125 F.4th at

3  997; *Rentmeester*, 883 F.3d at 1118.

4      "The extrinsic test focuses on 'articulable similarities between the plot,

5  themes, dialogue, mood, setting, pace, characters, and sequence of events' in the two

6  works." *Funky Films, Inc. v. Time Warner Entm't Co. LP*, 462 F.3d 1072, 1077 (9th

7  Cir. 2006) (citing *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1044

8  (9th Cir. 1994)). "In applying the extrinsic test, [the] court 'compares, not the basic

9  plot ideas for stories, but the actual concrete elements that make up the total

10  sequence of events and the relationships between the major characters.'" *Funky

11  Films*, 462 F.3d at 1077 (citing *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir.

12  1985)).

13      Notwithstanding the difficulty of parsing through the TAC to understand the

14  infringing content, Secret Defendants have determined that Rainbow seeks to

15  improperly hold them liable for infringements of motion picture copyrights—

16  copyrights with performing arts registrations that are categorized as "Motion

17  Picture" (*See generally* Dkt. 25-1) (these copyrights are referred to herein as "PA

18  Registrations"). 49 of the 66 allegedly infringed copyrights are PA Registrations.

19  Most PA Registrations refer to episodes of Rainbow's television programs, with one

20  being a trailer. Dkt 25 ¶ 290 (PA0002519452). Rainbow does not, however, contend

21  such infringement is based *at all* on the "the plot, themes, dialogue, mood, setting,

22  pace, characters, and sequence of events" contained in either the copyrighted

23  material or Royale High. *See Funky Films, Inc.*, 462 F.3d, at 1077. Indeed, Rainbow

24  seeks to hold Secret Defendants liable for infringement of PA Registrations solely

25  by virtue of the alleged copying of a single visual element that appears in the motion

26  picture.

27      For 35 of the 49 PA Registrations (Counts 1, 8–12, 14, 16, 20–21, 23–37, 39–

28  44, 48–51), Rainbow alleges infringement based on the mere visual depiction of a

12

character or character's outfit (such as wings) being similar to one appearing within these episodes, regardless of whether there is any plot, character, narrative or other relevant elements from the PA Registrations in the infringing work. For example, Rainbow alleges the visual depiction of a fish-like image in Royale High infringes Episode Registration Nos. PA0002519435, PA0002519445, and PA0002519437 (Counts 8, 11, and 12 respectively). Rainbow does not otherwise allege infringement of these registrations. Rainbow never describes the content of the motion pictures associated with these PA Registrations. *See e.g.* TAC ¶ 245 ("Rainbow's WINX CLUB animated TV series features a certain character (a female fish-like character) which appears in many videos covered by [Rainbow's] United States Copyright Registrations …. For example, below is screen shot from the video covered by … Registration No. PA0002519445...."). *See also*, *id.* ¶¶ 246–247. The alleged characters from these PA Registrations is shown below:

 

*Id.* ¶¶ 245–247 respectively.

      Rainbow offers no content-related information to show that Royale High is substantially similar to any PA Registration. Instead, Rainbow merely alleges, "On





13

information and belief, as shown below, Defendants' Royale High game features, or did feature, a character that looks substantially, if not strikingly similar to Rainbow's character." *Id.* ¶ 248. The alleged game content is shown below: *Id.* The entire basis for Rainbow's infringement theory therefore rests on the visual depiction of this character.

For 14 of the 49 PA Registrations (Counts 2–7, 13, 15, 17, 19, 22, 38, 45–46), Rainbow asserts that stills from these episodes allegedly appearing in Royale High constitute infringement. *See e.g. id.* ¶¶ 65, 170. Again, Rainbow offers no description of plot, character, or other relevant factor to determine whether such alleged copying qualifies as "unlawful appropriation."

For all PA Registrations, Rainbow fails to allege facts enabling the Court or Secret Defendants to evaluate the "actual concrete elements that make up the total sequence of events and the relationships between the major characters." *See Berkic*, 761 F.2d, at 1293.

The TAC fails to state a claim for unlawful appropriation of the PA Registrations because Rainbow's infringement allegations rely solely on visual elements without sufficient context to demonstrate similarity. Secret Defendants therefore respectfully request dismissal of Count Nos. 1–49.

## E.    Rainbow's Episode-Related Infringement Counts (1–49) Assert Duplicate, Derivative Copyrights

Rainbow improperly seeks duplicative recovery for character infringement through both visual art registrations ("VA Registrations") and PA Registrations. PA Registrations of episodes containing characters with existing VA registrations protect only derivative works with new *audiovisual* expression, not the underlying characters. *See* 17 U.S.C. § 103(b) (copyright in a derivative work extends only to material contributed by the author, distinguishing it from preexisting material) and § 101 (defining a "derivative work" as one "recast, transformed, or adapted" from preexisting works).

14

For statutory damages, all parts of a derivative work constitute a single work, with awards determined by the number of individual "works" infringed, not the number of separate infringements. 17 U.S.C. § 504(c)(1); *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1189–1190 (9th Cir. 2016) (citing *Walt Disney Co. v. Powell*, 897 F.2d 565, 569 (D.C. Cir. 1990)). As *Walt Disney Co.* noted, "[w]hile Mickey and Minnie are certainly distinct, viable works with separate economic value and copyright lives of their own, we cannot say the same is true for all six of the Disney copyrights of Mickey and Minnie in various poses … Mickey is still Mickey whether he is smiling or frowning, running or walking, waving his left hand or his right." *Walt Disney Co.*, 897 F.2d, at 570. Thus, the character design embodied in the VA Registrations constitutes a single work, regardless of Rainbow's alleged re-use or re-registration in different audiovisual contexts.

Secret Defendants identify several examples of the improperly duplicative and derivative counts.

Count 53 alleges infringement of the visual depiction of the character Bloom at Registration No. VA0002426867. An example, allegedly from Royale High, is below:



TAC ¶ 43.

Rainbow alleges that this image infringes the copyright for Bloom with Registration No. VA0002426867. *See id.* ¶¶ 38, 1041. An example of such visual depiction of this registration number is below:



Rainbow, also alleges that this same depiction in Royale High is the basis for infringement of PA Registrations shown below:



*See e.g. id.* ¶¶ 40–42 (PA0002520520 (Count 4), PA0002519448 (Count 9), PA0002519449 (Count 10)). Rainbow therefore admits that Bloom's presence in these episodes is derivative of Registration No. VA0002426867. As explained, Rainbow cannot recover infringement damages associated with infringement of these other episodes absent an independent basis for such infringement.

Additionally, to the extent the Court is not inclined to dismiss the PA Registrations as argued above, the PA Registrations are likewise derivative of one another. For example, Rainbow alleges that a "school" in the game shown below infringes a variety of the PA registrations:

SECRET WATERFALL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PROCEEDINGS, Case No. 5:25-0597-MRA(DTBx)



*id.* ¶ 53.

Rainbow alleges this "high school" element of Royale high infringes several PA registrations:

*id.* ¶ 51 (Registration No. PA0002520199 (Count 1)).

SECRET WATERFALL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PROCEEDINGS, Case No. 5:25-0597-MRA(DTBx)

1
2
3
4
5
6
7
8
9
10
11



12 *id.* ¶ 52 (Registration No. PA0002520526 (Count 2)).

13
14
15
16
17
18
19
20
21
22 *id.* ¶ 48 (Registration No. PA0002520196 (Count 3)).
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10



11
12 *id.* ¶ 46 (Registration No. PA0002483054 (Count 41).

13
14
15
16
17
18
19
20
21
22
23



24
25
26 *Id.* ¶ 47 (Registration No. PA0002483044 (Count 43).

27
28

19

SECRET WATERFALL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS PROCEEDINGS, Case No. 5:25-0597-MRA(DTBx)

Rainbow alleges that a different image in the game also infringes Registration No. PA0002483044 (Count 43):



*Id.* ¶ 211.

But Rainbow also alleges that the registration of this same character (Chatta), Registration No. VA VA0002426885, is among the copyrights infringed:



20

1

2    *Id.* ¶ 207 (Registration No. VA0002426885 (Count 59).

3        Rainbow alleges Royale High infringes not only these two copyrights, but

4    also PA copyright Registration Nos. PA002519638 (Count 16), PA0002520248

5    (Count 13), and PAU004255089 (Count 47)  (*id.* ¶¶ 212,  210, 213 respectively) by

6    depicting "Chatta" in the Royale High the game, as shown below:

7

8

9

10

11    

12

13

14

15

16

17    

18

19

20    *Id.* ¶ 214.

21        The foregoing are mere examples of the numerous allegations relating to

22    different parts of a PA registration which are derivative of one another and/or

23    derivative of VA registrations. Rainbow seeks to use such different parts to hold

24    Secret Defendants liable multiple times for the *same* PA Registration, and for the

25    *same* Character (VA Registration).  This issue is present throughout the TAC, but as

26    discussed above, the confusing shotgun nature of the TAC makes it unreasonable

27    and impracticable for Secret Defendants to identify all examples.

28        Therefore, if the Court is not inclined to dismiss the Counts associated with

21

the PA Registrations in their entirety, Secret Defendants respectfully request that the
Court order Rainbow to clearly identify the unique Copyrights it contends are
alleged, and by what elements of the game, and to dismiss those copyrights that are
derivative of others.

### F.    Counts 68 Should Be Dismissed Because Rainbow Alleges No Fraudulent Conduct and Is Not Entitled to An Injunction

Rainbow's unfair competition claim (Count 68) seeks damages and an
injunction because of Secret Defendants' alleged unlawful business practices and
fraud. *See* TAC ¶¶ 1251, 1259. This claim should be dismissed. Rainbow does not
allege fraud with particularity, because it no good faith basis to allege any facts
describing fraud. Removing fraud eliminates Rainbow's ability to recover damages.
Furthermore, Rainbow's allegations preclude any injunction for the alleged conduct.

#### 1.    Rainbow Fails to Allege Fraud with Particularity

Under Rule 9(b), claims of fraud must be alleged "with particularity."
Plaintiffs must "'identify the who, what, when, where, and how of the misconduct
charged.'" *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018)
(quoting *Cafasso*, 637 F.3d at 1055). Even for claims where fraud is not a necessary
element, where a plaintiff alleges fraud, "the claim is said to be 'grounded in fraud'
or to 'sound in fraud,' and the pleading … as a whole must satisfy the particularity
requirement." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009)
(citing *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003)
(applying heightened pleading standard to claim that alleges fraudulent conduct
even though fraud is not necessary for an unfair competition claim).

Fraud allegations must "be 'specific enough to give defendants notice of the
particular misconduct which is alleged to constitute the fraud charged so that they
can defend against the charge and not just deny that they have done anything

22

wrong.'" *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 671 (9th Cir. 1993)).

In count 68, Rainbow alleges that all defendants engaged in unlawful, unfair, and fraudulent business acts (TAC ¶ 1262), but fails to allege the "who, what, when, where, and how" of the allegedly fraudulent misconduct. Rainbow's conclusory allegations of fraud give no notice that allows Secret Defendants to defend against this charge of fraud. Count 68 should be dismissed. *See Untied States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016).

### 2. Removing Fraud Claims from Count 68 Eliminates Rainbow's Ability to Recover Damages.

If Rainbow removes its fraud allegations from Count 68, Rainbow's claim for damages arising from unfair competition will fail because "damages for unfair competition are available only upon a showing of 'fraud or an intent to mislead consumers.'" *Lodestar Anstalt v. Bacardi & Co.*, 2019 U.S. Dist. LEXIS 228304, at *45 (C.D. Cal. July 3, 2019) (quoting *Los Defensores, Inc. v. Gomez*, 223 Cal. App. 4th 377, 393 (2014).); *see also Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1263 (1992) (such a claim is "generally thought to be synonymous with the act of 'passing off' one's good as those of another"). Without a viable fraud theory, Rainbow is not entitled to damages for Count 68.

### 3. Rainbow's Allegations Preclude Any Injunction

As discussed above in Section V.B, Rainbow has not alleged any ongoing conduct that would entitle it to an injunction. Therefore, Count 68 should be dismissed.

### G. Rainbow's Trademark Infringement Claims Should Be Dismissed

"A trademark is a word, phrase or symbol that is used to identify a manufacturer or sponsor of a good or the provider of a service." *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002). It serves an "identifying purpose," for the owner to

23

"prevent[] others from duping consumers into buying a product they mistakenly believe is sponsored by the trademark owner." *Id.* To establish trademark infringement or unfair competition under the Lanham Act, a plaintiff must show that (1) the plaintiff has a protectable ownership interest in the mark, and (2) that the defendant's use of the mark is likely to cause consumer confusion. *Evo Brands, LLC v. Al Khalifa Grp. LLC*, 657 F. Supp. 3d 1312, 1324 (C.D. Cal. 2023) (citing 15 U.S.C. §§ 1114(1), 1125(a). For the reasons discussed below, Rainbow's trademark infringement claims should be dismissed.

### 1. Rainbow Alleges no Infringement of its Registered Trademarks

A subset of Rainbow's Trademark infringement theories alleges without any factual basis that Royale High infringes several "Winx"-related trademark registrations. *See* TAC ¶¶ 33–34, 1236–1248 (including registered Winx registrations among the "Winx Club Trademarks" allegedly infringed). There is no factual allegation, however, of any element of Royale High using any registered trademark. Indeed, Rainbow expressly removed the only image purportedly from Royale High from its factual allegations. *See*: Dkt. 29 at 20 (striking the image of "Winx Club" writing in an image). Notwithstanding the removal of this image, Rainbow alleges, without any factual support, that "Defendants have infringed, or are infringing" these registrations. *See* TAC ¶ 36. Without identifying any allegedly infringing material, Rainbow has not plausibly alleged *any* use of Rainbow's trademark, let alone that such use is likely to cause customer confusion. *Evo Brands, Ltd. Liab. Co.*, 657 F. Supp. 3d, at 1324. Rainbow's trademark claims relating to the Winx registrations should therefore be dismissed.

### 2. Rainbow's Common Law Trademark Theory Should Be Dismissed.

Furthermore, Rainbow's trademark theory that Royale High infringes

unidentified "common law" trademarks (*See* TAC ¶¶ 35–37, 1236–1248) should be dismissed. Rather than identify the common law trademarks, Rainbow alleges it holds such marks relating to "each of its Winx Club characters Aisha, Bloom, Flora, Musa, Stella, and Tecna, as described and shown herein (Rainbow's Common Law Marks)." *Id.* ¶ 35. Rainbow does not identify these common law marks, or even explain how they can be identified. This is a further example of Rainbow's improper shotgun pleading. Moreover, for the reasons described in the previous section, Rainbow improperly fails to identify any specific infringing materials.

Furthermore, Rainbow's claims should be dismissed under the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which the Ninth Circuit applies to balance the trademark and similar rights protected by § 43(a) of the Lanham act against First Amendment rights in cases involving expressive works. *Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013). The Ninth Circuit applies *Rogers* to expressive works, like video games, "including where the trademark or other identifying material in question was used in the body of the work rather than in the title." *Id.* The *Rogers* test applies when an allegedly infringing mark is not used to designate the source or origin of the media in which it appears, as is the case here. *See Hara v. Netflix, Inc.*, 2025 U.S. App. LEXIS 18690, at *2-3 (9th Cir. July 28, 2025).

"The *Rogers* test requires the defendant to make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment." *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018). Upon this showing, the Lanham Act only applies if "the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work." *Id.* "'Artistic relevance' in *Rogers*'s first prong means artistic relevance merely . . . above zero, such that a trademark infringement plaintiff can avoid *Rogers* only if the use of the mark has '*no* artistic relevance to the underlying work *whatsoever*.'" *Punchbowl, Inc. v. Aj Press, LLC*,

25

90 F.4th 1022, 1028 (9th Cir. 2024) (emphasis in original) (quoting *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099–1100 (9th Cir. 2008). The "explicitly misleading" element of *Rogers'* second prong requires "'an explicit indication, overt claim, or explicit misstatement' about the source of the work." *Dr. Seuss Enters., L.P. v. ComicMix LLC*, F.3d 443, 462 (9th Cir. 2020) quoting *Brown*, 724 F.3d at 1235).

          a.    *The Allegedly Infringing Marks Have Artistic Relevance.*

Rainbow has not pled that the artistic relevance of the alleged use of Rainbow's alleged trademarks in Royale High is not "above zero." In a similar case involving a logo in a video game, the Central District found that "the use of the phrase 'Delta Force' and the MW3 Delta Force Logo easily met the artistic relevance requirement under *Rogers* because their use is not wholly unrelated to the content of the work." *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 900 (C.D. Cal. 2013). The court found the marks "serve as a means to increase specific realism of the game. Moreover, they help satisfy the ever-increasing demand for 'authentic simulation' in video games and add immensely to the enjoyment users receive from playing the complicated game, which undoubtably accounts for its enormous success." *Id.* at 900–901; *Haas v Automation, Inc. v. Steiner*, 750 F. Supp. 3d 1107, 1118 (C.D. Cal. 2024) ("Using photos that include the Haas Marks is an artistic choice to provide additional context" in book about the "Haas F1 Team.")

Rainbow confirms there is relevance to the alleged use of Rainbow's trademarks in Royale High, a "high school-themed roleplaying and dress-up game that takes place in an online fantasy realm." TAC ¶ 22. Rainbow identifies the allegedly infringing content as being among the "art" within Royale High's since-removed fantasy realm called "Enchantix High." *See e.g. Id.* ¶¶ 23, 26, 55.

The *Rogers* test's first prong has been met because Rainbow confirms the artistic relevance of the alleged use of Rainbow's trademarks.

          b.    *There are No Relevant Misleading Statements.*

Royale High has no "explicitly misleading" reference to Rainbow as the source. "'To be 'explicitly misleading,' a defendant's work must make some affirmative statement of the plaintiff's sponsorship or endorsement, beyond the mere use of the plaintiff's name or other characteristic.'" *Novalogic*, 41 F. Supp. 3d at 901 (citing *Dillinger, LLC v. Electronic Arts Inc.*2011 U.S. Dist. LEXIS 64006, at *6 (S.D. Ind. June 16, 2011)). "Without such an affirmative statement, the second prong of the *Rogers* test is not satisfied because the 'mere use [of a mark], without more, is insufficient to make the use explicitly misleading.'" *Novalogic*, 41 F. Supp. 3d at 901 (citing *Roxbury Entertainment v. Penthouse Media Group*, 669 F. Supp. 2d 1170, 1176 (C.D. Cal. 2009)).

Rainbow alleges no affirmative statement. Indeed, the mere alleged use of the "Winx" mark or the Common Law marks, in and of themselves, are not "explicitly misleading." *See e.g. Rogers*, 875 F.2d at 999–1000 (use of marks within the title of a work "without any overt indication of authorship or endorsement" such that even false, but *implicit*, suggestion of endorsement that is artistically relevant is not actionable under the Lanham Act).

Royale High indisputably meets *Rogers*' second prong. The alleged use is protected by the First Amendment. Rainbow's trademark infringement claims should be dismissed.

## H.     Rainbow's Trademark Dilution Claims (Counts 69 and 72) Are Deficient

A California statutory or common law trademark dilution claim requires, *inter alia*, allegations that "the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008); *AAA, Inc. v. AAA Auto Body & Repair, Inc.*,2015 U.S. Dist. LEXIS 25172, at *12–13 (N.D. Cal. Feb. 9, 2015) (California trademark dilution under § 1427 and common law are "substantially similar" and "substantially congruent" respectively).

27

1    Rainbow asserts only conclusory and formulaic allegations of dilution. *See*

2    TAC ¶ 1274 (Defendants' actions have "creat[ed] the potential for consumer

3    confusion and dilution of Rainbow's famous marks"); *id.* ¶ 1340 (Defendants' acts

4    are "likely to result in harm, via lost sales, damage to reputation, and dilution of the

5    trademarks' distinctiveness.") Indeed, other than referring to the causes of action (*id.*

6    ¶¶ 1, 33), Rainbow's only dilution allegations appear in these two formulaic

7    paragraphs. Such allegations "are insufficient to state a claim." *See Klein Elecs., Inc.*

8    *v. Boxwave Corp.*, 2011 U.S. Dist. LEXIS 69525, at *5–6 (S.D. Cal. June 17, 2011)

9    (granting motion to dismiss where Plaintiff offered only a formulaic recitation of

10   elements of trademark dilution claim).

11   Unless Rainbow plausibly alleges that the alleged dilution is willful, its only

12   remedy is an injunction. *See* Cal. Bus. Prof. C. §§ 14247, 14250. Rainbow has

13   neither identified, nor alleged any fact suggesting Secret Defendants have willfully

14   sought to dilute any allegedly famous mark. As explained above in section V.B,

15   Rainbow is not entitled to an injunction.

16   **V.    CONCLUSION**

17   As described above, Rainbow's Third Amended Complaint is defective for a

18   variety of reasons, many of which cannot be cured through amendment. Secret

19   Defendants therefore respectfully request that the Court grant their Motion to

20   Dismiss.

21   Dated: February 16, 2026          BERGESON LLP

22

23                                     By:     /s/  Jaideep Venkatesan

24                                            Jaideep Venkatesan

25                                     Attorneys for Defendants
                                       SECRET WATERFALL LLC,
26                                     LAUNCELOT A. DEVAULT, AND TARAH
                                       A. UHRICH
27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Secret Waterfall Llc, Launcelot A. Devault, And Tarah A. Uhrich, certifies that this brief contains 6,989 words, which complies with the word limit of L.R. 11-6.1.

Dated:   February 16, 2026          BERGESON LLP


                                    By:    /s/  Jaideep Venkatesan
                                          Jaideep Venkatesan

                                    Attorneys for Defendants
                                    SECRET WATERFALL LLC,
                                    LAUNCELOT A. DEVAULT, AND TARAH
                                    A. UHRICH

SECRET WATERFALL LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS PROCEEDINGS, Case No. 5:25-0597-MRA(DTBx)