Clark Hill LLP
Bradford G. Hughes (SBN 247141)
bhughes@ClarkHill.com
David J. Hulett (SBN 347208)
dhulett@ClarkHill.com
555 South Flower Street, 24th Floor
Los Angeles, CA 90071
Telephone:  (213) 891-9100
Facsimile:  (213) 488-1178

Attorneys for Plaintiff RAINBOW S.p.A

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| RAINBOW S.P.A, <br><br> Plaintiff, <br><br> v. <br><br> SECRET WATERFALL LLC; LAUNCELOT A. DEVAULT; TARAH A. UHRICH; STARLINE MEDIA, INC.; AND DAVID NDALAMBA, <br><br> Defendant. | Case No. 5:25-0597-MRA(DTBx) <br><br> **PLAINTIFF RAINBOW S.P.A.'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Ctrm:    9B <br> Judge:    Hon. Monica Ramirez Almadani |

Plaintiff RAINBOW S.p.A. ("Rainbow" or "Plaintiff"), through its undersigned counsel, respectfully submits this Opposition to the Motion to Dismiss the Third Amended Complaint ("TAC") filed by Defendants SECRET WATERFALL LLC, LAUNCELOT A. DEVAULT, and TARAH A. UHRICH (collectively "Secret Defendants" or "Defendants"). For the reasons set forth herein, Defendants' Motion should be denied in its entirety.

///

///

///

1

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
ClarkHill\M5070\486618\286882432.v2-3/26/26

# **TABLE OF CONTENTS**

I.    INTRODUCTION ....................................................................................... 1

II.   APPLICABLE LEGAL STANDARD ....................................................... 1

  A.    Motion to Dismiss Under Rules 8 and 12(b)(6) ................................ 1

  B.    Motion to Dismiss Under Rule 12(b)(1) ............................................ 2

III.  OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ARGUMENT ............................................................................................. 3

  A.    The TAC is Not an Impermissible "Shotgun" Pleading ...................... 3

    1.    Rainbow's Incorporation by Reference is Proper ..................... 5

    2.    Rainbow's Inability to Distinguish Specific Conduct as Against Each Defendant Is Not Grounds for Dismissal ............. 6

    3.    Rainbow's Trademark-Related Counts Are Sufficiently Pled ........................................................................ 7

  B.    The Secret Defendants' Infringing Works are Substantially Similar to Rainbow's Episode-Related Copyrights Alleged in Counts (1-49) ..................................................................................... 9

  C.    Rainbow's Episode-Related Infringement Allegations in Counts (1-49) Do Not Assert Duplicative, Derivative Copyrights ......................................................................................... 10

  D.    Rainbow's Trademark Dilution Claims (Counts 69 and 72) Are Sufficiently Pled .......................................................................... 12

  E.    Rainbow's Trademark Infringement Claims Are Sufficiently Pled ....................................................................................................... 13

    1.    Rainbow Adequately Alleged Infringement of its Registered Trademarks ............................................................ 14

    2.    Rainbow's Common Law Trademark Theory Meets the Threshold Pleading Requirements ...................................... 15

    3.    Rogers Is Inapplicable ............................................................ 16

  F.    Count 68 Should Not be Dismissed Because Rainbow Properly Alleges Fraudulent Conduct and is Entitled to Injunctive Relief .................................................................................. 17

    1.    Rainbow Alleges Fraud with Sufficient Particularity ............. 18

    2.    Rainbow's Sufficient Fraud Allegations Entitle it to Recover Both Damages and Injunctive Relief ........................ 19

i

G.    Counts 14 and 16 Contain Adequate Factual Allegations of
Infringement ........................................................................................ 19

H.    Rainbow is Entitled to Injunctive Relief for Its Counts ...................... 20

IV.   CONCLUSION ................................................................................................ 22

CASE NO.:  5:25-0597-
MRA(DTBX)

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

ClarkHill\M5070\486618\286882432.v2-3/26/26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adidas America, Inc. v. Thom Browne Inc.*,
  599 F.Supp.3d 151 (S.D. Ny. 2022)....................................................................7

*AJ Mgmt. Consulting, LLC v. MBC FZ-LLC*,
  No. 13-cv-03213-BLF, 2014 WL 2878891 (N.D. Cal. June 24,
  2014)....................................................................................................................10

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ............................................................................................1

*Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.*,
  174 F.3d 1036 (9th Cir. 1999)............................................................................8

*Canon, Inc. v. Color Imaging, Inc.*,
  292 F.Supp.3d 1339 (N.D. Ga. 2018) ...............................................................20

*Cardenas v. Cnty. of Tehama*,
  476 F. Supp. 3d 1055 (E.D. Cal. 2020)...............................................................3

*Chevron U.S.A. Inc. v. Apex Oil Company, Inc.*
  113 F.Supp.3d 807...............................................................................................6

*Committee On Children's Television, Inc. v. General Foods Corp.*,
  35 Cal.3d 197 (1983)...........................................................................................2

*D.C. Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2005)...........................................................................10

*Doe v. Lombardo*,
  745 F.Supp.3d 1109 (D. Nev. 2024) ...................................................................4

*E. & J. Gallo Winery v. Consorzio del Gallo Nero*,
  782 F. Supp. 457 (N.D. Cal. 1991)....................................................................14

*Fleischer Studios, Inc. v. A.V.E.L.A., Inc.*,
  654 F.3d 958 (9th Cir. 2011)..............................................................................15

*Gianni Versace, S.p.A. v. Versace 19.69 Abbigliamento Sportivo SRL*,
  328 F.Supp.3d 1007 (N.D. Cal. 2018) ..............................................................14

iii

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

ClarkHill\M5070\486618\286882432.v2-3/26/26

*In re GO & Associates, LLC*,
90 F.4th 1354 (Fed. Cir. 2024)..................................................................................16

*In re Google Generative AI Copyright Litigation*,
809 F.Supp.3d 903 (N.D. Cal. 2025)........................................................................10

*Haas Automation, Inc. v. Steiner*,
750 F.Supp.3d 1107 (C.D. Cal. 2024)......................................................................16

*Hermes International v. Rothschild*,
654 F.Supp.3d 268 (S.D. Ny. 2023).....................................................................16, 17

*Horphag Research Ltd. v. Garcia*,
475 F.3d 1029 (9th Cir. 2007)..................................................................................12

*Jack Daniel's Props. v. VIP Prods.*,
599 U.S. 140 (2023) ..................................................................................................16

*Jahr Printing & Pub. Co. v. Meredith Corp.*,
991 F.2d 1072 (2d Cir. 1993)....................................................................................17

*Kanfer v. Pharmacare US, Inc.*,
142 F. Supp. 3d 1091 (S.D. Cal. 2015) ....................................................................22

*Kisting-Leung v. Cigna Corporation*,
780 F.Supp.3d 985 (E.D. Cal. 2025)........................................................................18

*In re Lloyd's American Trust Fund Litigation*,
954 F.Supp. 656 (S.D. Ny. 1997)..............................................................................22

*Maya Swimwear, Corp. v. Maya Swimwear, LLC*,
789 F.Supp.2d 506.......................................................................................................8

*McGraw-Hill Global Education Holdings, LLC v. Mathrani*,
295 F.Supp.3d 404 (S.D. Ny. 2017)............................................................................7

*Multimedia Patent Trust v. Microsoft Corp.*,
525 F.Supp.2d 1200 (S.D. Cal. 2007) ......................................................................18

*New York Times Company v. Microsoft Corporation*,
777 F.Supp.3d 283 (S.D. Ny. 2025)............................................................................3

*Nia v. Bank of America, N.A.*,
603 F.Supp.3d 894 (S.D. Cal. 2022) ........................................................................18

iv

*Queen's Harbour Yacht & Country Club Ass'n v. Lee*,
No. 309–cv–1256–J–34MCR, 2010 WL 1030740 (M.D. Fla. Mar.
18, 2010) ................................................................................................. 8

*R & R Partners, Inc. v. Tovar*,
447 F.Supp.2d 1141 (D. Nev. 2006) ....................................................... 3

*Rearden, LLC v. Walt Disney Pictures*,
152 F.4th 1058 (9th Cir. 2025) ............................................................ 20

*Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*,
531 F.3d 962 (9th Cir. 2008) ............................................................... 19

*Robles v. City of Chicago*,
354 F.Supp.3d 873 (N.D. Ill. 2019)........................................................ 6

*Rogers v. Grimaldi*,
875 F.2d 994 (2d Cir. 1989) .................................................... 15, 16, 17

*Romag Fasteners, Inc v. Fossil, Inc.*,
590 U.S. 212 (2020) ............................................................................. 15

*Russo v. Fed. Med. Servs., Inc.*,
744 F. Supp. 3d 914 (N.D. Cal. 2024) ................................................... 6

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004)................................................................ 2

*Sega Enters. Ltd. v. MAPHIA*,
948 F. Supp. 923 (N.D. Cal. 1996)....................................................... 20

*Smith v. City of Oakland*,
612 F. Supp. 3d 951 (N.D. Cal. 2020) ................................................... 2

*Snyder & Assocs. Acquisitions LLC v. United States*,
859 F.3d 1152 (9th Cir. 2017)............................................................... 1

*Superior Edge, Inc. v. Monsanto Co.*,
44 F.Supp.3d 890 (D. Minn. 2014) ....................................................... 5

*Tarmann v. State Farm Mut. Auto. Ins. Co.*,
2 Cal.App.4th 153 (1991).......................................................................2

*Telebrands Corp. v. Del Laboratories*,
719 F.Supp.2d 283 (S.D. Ny. 2010)....................................................... 3

v    CASE NO.: 5:25-0597-
MRA(DTBX)

*Tools Aviation, LLC v. Digital Pavilion Electronics LLC*,
797 F.Supp.3d 222 (E.D. Ny. 2025) ................................................................20

*Two Pesos, Inc. v. Taco Cabana, Inc.*,
505 U.S. 763 .......................................................................................................13

*United States v. United Healthcare Ins. Co.*,
848 F.3d 1161 (9th Cir. 2016) ...........................................................................20

**Statutes**

15 U.S.C. section 1117(a) .....................................................................................15

17 U.S.C. §§ 101 et seq. .......................................................................................19

17 U.S.C. §§ 103(a), 106(2) .................................................................................10

**Rules**

Fed. R. Civ. P. 8 .............................................................................................*passim*

Fed. R. Civ. P. 8(a) .............................................................................................18

Fed. R. Civ. P. 9(b) ..........................................................................................2, 18

Fed. R. Civ. P. 10 ..................................................................................................3

Fed. R. Civ. P. 10(c) .............................................................................................5

Fed. R. Civ. P. 12(b)(1) .........................................................................................2

Fed. R. Civ. P. 12(b)(6) ..................................................................................1, 10

**Other Authorities**

First Amendment .................................................................................................15

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Rainbow's Third Amended Complaint ("TAC") against Defendants Secret Waterfall LLC, Launcelot A. Devault, and Tarah A. Uhrich (collectively "Secret Defendants") paints a clear picture of the events giving rise to this dispute. Since its premiere on Italian television in 2004, Winx Club has grown exponentially, becoming a household name with viewers in virtually every corner of the globe.

The TAC alleges that the Secret Defendants knowingly and deliberately infringed upon Rainbow's intellectual property related to Winx Club and misappropriated the wide fanbase dedicated Winx Club to build a similar following through its own online game, "Royale High." Royale High features obvious, unauthorized copies of characters and storylines from Winx Club. The Secret Defendants published Royale High on Roblox and charged users for in-game purchases. When Rainbow discovered the infringing game online, it demanded immediate removal of all infringing content and compensation for the ill-gotten gains the defendants[1] received under the work done by Rainbow.

## II.    APPLICABLE LEGAL STANDARD

### A.    Motion to Dismiss Under Rules 8 and 12(b)(6)

In evaluating a motion to dismiss, the court must "accept as true all facts alleged in the complaint and construe them in the light most favorable to the plaintiff." *Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged…[T]he standard 'calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the claim." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

///

_____

[1] The TAC names additional Defendants Starline Media, Inc. and David Ndalamba

CASE NO.: 5:25-0597-MRA(DTBX)

Dismissal is improper unless the complaint lacks a "cognizable legal theory," or sufficient facts alleged under a cognizable theory. *Id.* The factual allegations "need only be so specific that the defendant can prepare an adequate answer." *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991). The complaint "need not allege 'a precise time frame,' 'describe in detail a single specific transaction' or identify the precise method' used to carry out the fraud. *Id.* (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). Rainbow's detailed and well-pleaded TAC readily meets this standard and states plausible claims for relief.

Moreover, Rule 9(b)'s heightened pleading standard for fraud does not apply where the relevant facts lie primarily within the defendant's knowledge. *Committee On Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 217 (1983). The Individual Defendants were responsible for the design and programing of the games produced by Secret Waterfall LLC and controlled the creative decision making regarding the use of Rainbow's protected intellectual property to establish a following for their program through bona fide theft from Rainbow. Indeed, the TAC provides more than enough detail and is sufficiently organized to inform the Secret Defendants of all the claims against them.

### B.    Motion to Dismiss Under Rule 12(b)(1)

"A Rule 12(b)(1) jurisdictional attack can be either facial or factual." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack challenges the sufficiency of a complaint's allegations on their face. *Id.* With "a facial attack, the court assumes that the complaint's allegations are true and draws all reasonable inferences in the plaintiff's favor." *Smith v. City of Oakland*, 612 F. Supp. 3d 951, 958 (N.D. Cal. 2020) (citation omitted). In contrast, a factual attack disputes the truth of the allegations through "affidavits or other evidence properly brought before the court." *Safe Air for Everyone*, 373 F.2d at 1039.

With a factual attack, "the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter

2

jurisdiction." *Id.* The Court may review this evidence and make findings of genuinely disputed facts "without converting the motion to dismiss into a motion for summary judgment." *Id.*

The fundamental standing inquiry on a motion to dismiss for lack of subject matter jurisdiction requires plaintiffs to satisfy Article III's case or controversy requirement by demonstrating an injury in fact. In copyright and trademark infringement cases, the harm traditionally recognized as providing a basis for lawsuits in American courts serves as an appropriate historical or common-law analogue to establish concrete injury. *New York Times Company v. Microsoft Corporation*, 777 F.Supp.3d 283, 311 (S.D. Ny. 2025). The Copyright Act authorizes exclusive licensees to bring infringement claims, and ownership of the copyright or exclusive rights therein provides the basis for injury in fact. *Telebrands Corp.,* 719 F.Supp.2d at 289 (S.D. Ny. 2010). Similarly, trademark owners who retain rights in their marks have Article III standing to bring infringement actions. *R & R Partners, Inc*., 447 F.Supp.2d at 1149.

## III.    OPPOSITION TO DEFENDANTS' MOTION TO DISMISS ARGUMENT

### A.    The TAC is Not an Impermissible "Shotgun" Pleading

The notice pleading rule requires that "the complaint must give the defendant fair notice of what the claim is and the grounds upon which it rests." *Cardenas v. Cnty. of Tehama*, 476 F. Supp. 3d 1055, 1062 (E.D. Cal. 2020). A complaint is not a "shotgun" pleading simply because it contains many claims or incorporates previous allegations by reference.

So long as the complaint is organized in a manner that allows the defendant to discern the nature of the claims and the factual basis for each, and complies with the requirements of Rules 8 and 10, dismissal on the basis of "shotgun pleading" is not warranted. Furthermore, federal courts have recognized that "dismissal under Rule 8—particularly without leave to amend—is disfavored absent egregiously long

3

or confusing pleadings." *Doe v. Lombardo*, 745 F.Supp.3d 1109, 1125 (D. Nev. 2024).

Rainbow's TAC is not so long or confusing as to deprive Secret Defendants of notice of the claims against them. The TAC includes roughly 400 photographs and screenshots demonstrating Rainbow's protected intellectual property positioned next to Secret Defendants' infringing content. For example, Exhibit G in the TAC depicts three blatant examples of infringement with the Winx school building, Bloom's bedroom, and the character Bloom being copied. TAC ¶ 29. In paragraphs 46 through 53 of the TAC, Rainbow presents images of Alfea College, a school covered under, at least, Rainbow's copyright Registration No. PA0002520196. Immediately following this identification, in paragraph 54, Rainbow presents evidence of the Secret Defendants' copying of this very same building, their "version" of a magical high school. TAC ¶ 54. The similarities are evident without speculation. The TAC's structure permits ready identification of Rainbow's claims and grounds. For example, it (1) identifies BLOOM with registration and images, (2) shows Royale High's character also named 'Bloom' sharing the same wing structure and color, outfit, hair color/length, and body composition, and (3) pleads the corresponding count. Further, it explains the origin of the 'distinctive pink wings' with images before presenting the accused use. With roughly 400 side-by-side visuals, the TAC supplies fair notice without redundancy.

Therefore, Secret Defendants have more than adequate notice of the claims against them, and Rainbow has complied with its Rule 8 obligations. In their argument, the Secret Defendants would apparently prefer Rainbow provide *less* information to base their substantive response. The Secret Defendants may try to classify the TAC as a shotgun pleading only because there are such a substantial number of instances of infringement Rainbow includes in the TAC.

///

///

### 1.   Rainbow's Incorporation by Reference is Proper

Federal Rule of Civil Procedure 10(c) explicitly allows incorporation by reference, providing that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion." *Superior Edge, Inc. v. Monsanto Co.*, 44 F.Supp.3d 890, 898 (D. Minn. 2014). "Rule 10(c) was adopted to encourage pleadings that are short and free of unneeded repetition, [ ] and courts frequently allow parties to satisfy pleading requirements by incorporation by reference other paragraphs within the same complaint or counterclaim." *Id*. (internal citations omitted). Incorporation by reference only defeats its purpose of promoting efficiency where such incorporation makes it ***utterly impossible*** for the Defendants to discern which facts give rise to each cause of action against them. That is plainly not the case here.

Each count in the TAC is specific as to the trademark or copyright registration at issue, each of which were neatly laid out earlier in the TAC's "Some Examples of Actionable Similarities Between Royale High and Winx Club" section, which is clearly organized within the "Background" section of the TAC.

Moreover, Defendants complain that "the TAC vaguely refers to characters (e.g. "this character," "Bloom") without copyright numbers and describes elements (e.g., "distinctive wings") without clear preceding context or reference to enable the reader to understand or why such content may infringe," citing to paragraphs 39, 43, and 62 of the TAC. ECF 51, p. 6. On the contrary, the TAC does exactly that.

Paragraph 38 names the character "Bloom" as one frequently copied by Defendants, providing the copyright registration number and additionally followed by several images of Bloom. Clearly, Defendants can determine that "this character" referenced in paragraph 39 refers to the character identified and described in the preceding paragraph 38. Paragraph 43 again references Bloom, and the photos provided between paragraphs 38 and 42 likewise depict Bloom. Paragraphs 54 through 61 fully explain and provide photographic evidence and context for the

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT
ClarkHill\M5070\486618\286882432.v2-3/26/26

origin of the "distinctive pink wings," then in paragraph 62 show a visual example of Secret Defendants' infringement on the same.

Furthermore, Secret Defendants' position is fundamentally inconsistent. On the one hand, Secret Defendants complain that the TAC is too long, while on the other hand assert that Rainbow's incorporation by reference—designed to save the Court and the Parties time rather than restate all which came before—renders the TAC "unreasonably difficult" to understand. ECF 51, p. 5.

### 2.    Rainbow's Inability to Distinguish Specific Conduct as Against Each Defendant Is Not Grounds for Dismissal

There is no categorical "group pleading" doctrine "that either permits or forbids allegations against defendants collectively; 'group pleading' does not violate [Rule 8] so long as the complaint provides sufficient detail to put the defendants on notice of the claims." *Robles v. City of Chicago*, 354 F.Supp.3d 873, 875 (N.D. Ill. 2019). It must only give "fair notice" and "enable" the defendant "to defend itself effectively." *Russo v. Fed. Med. Servs., Inc.*, 744 F. Supp. 3d 914, 919 (N.D. Cal. 2024). Collective allegations are sufficient if the claims involve actors engaged in the same or similar conduct. *Id*. at 922. Indeed, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Chevron U.S.A. Inc. v. Apex Oil Company, Inc.* 113 F.Supp.3d 807, 815 at fn. 1 (D. Md.  2015).

This standard recognizes that plaintiffs may lack detailed information about individual defendants' specific roles at the pleading stage, particularly regarding internal business operations and coordinated activities among multiple parties.

The TAC unquestionably puts all Defendants, including the Secret Defendants, on notice that each allegation in the TAC is directed at them unless otherwise stated. TAC ¶¶ 1, 3, 21, 23, 25, 28, 32. As Rainbow is apprised only of the fact that the Individual Defendants were responsible for and/or the guiding forces behind the creative decisions that resulted in the creation of Royale High, the TAC

sufficiently alleges that each and every defendant is jointly and severally liable for the harms detailed in the TAC. What's more, the TAC explicitly states the same:

"Because Defendants collectively operate Royale High, each Defendant with their own unique role in the game's creation, development, promotion, and monetization, each Defendant is, on information and belief, jointly and severally liable as Defendants' collective conduct contributed to the indivisible injury of infringement." TAC ¶ 36.

Furthermore, Rainbow clearly states in its TAC that the individual Secret Defendants "personally participated in and were directly involved with the creation, development, release, and commercialization of Royale High" and thereby adequately alleges that the individual Secret Defendants' involvement in the game had everything to do with its infringing elements. TAC ¶¶ 13, 14. Contrary to the Secret Defendants' assertion, Rainbow has adequately pled its claims against the individual Secret Defendants and the TAC is therefore not appropriately subject to dismissal on these grounds.

### 3.    Rainbow's Trademark-Related Counts Are Sufficiently Pled

Courts have consistently held that a trademark complaint needs only to provide fair notice of which marks are at issue, not exhaustive detail. Describing marks through written explanations supplemented by photographic exhibits is sufficient, and even minimal descriptions can survive dismissal when the complaint provides enough context. *Adidas America, Inc. v. Thom Browne Inc.*, 599 F.Supp.3d 151, 160 (S.D. Ny. 2022) (denying motion to dismiss in part because plaintiff's complaint provided photographic examples of at least fifteen different pieces of clothing that were allegedly infringing); see also *McGraw-Hill Global Education Holdings, LLC v. Mathrani*, 295 F.Supp.3d 404, 415 (S.D. Ny. 2017) ("Requiring Plaintiffs to name all of the infringed works that may be part of the alleged counterfeiting scheme at the pleading stage would be a fool's errand—that is the

point of discovery.")

In denying a motion for a more definite statement, one court noted that it was "obvious" from the complaint that the plaintiff alleged infringement of all identified trademarks, even when the plaintiff listed seven trademarks and did not specify which particular mark was infringed. *Queen's Harbour Yacht & Country Club Ass'n v. Lee*, No. 309–cv–1256–J–34MCR, 2010 WL 1030740, at *1–*2 (M.D. Fla. Mar. 18, 2010). Additionally, a district court acknowledged that even where a plaintiff's complaint "barely satisfie[d] the Rule 8 pleading standards," it was sufficient to survive a motion to dismiss because "there is enough pled in various parts of the complaint to plausibly state a claim for trademark infringement." *Maya Swimwear, Corp. v. Maya Swimwear, LLC*, 789 F.Supp.2d 506, 517 at fn. 5 (D. Del. 2011).

Rainbow has more than met its burden under Rule 8 with regard to its Common Law Marks. Rainbow has pled facts sufficient to establish that (1) it has a protectable interest in the Marks (TAC ¶ 35); and (2) that the Secret Defendants' use of a similar mark is likely to cause consumer confusion (TAC ¶ 27). *Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp.,* 174 F.3d 1036, 1046 (9th Cir. 1999) Rainbow identifies the Common Law Marks as the visual depictions of each of its Winx Club characters, then lists those characters and provides numerous photographic examples of these characters throughout the TAC. It is easily ascertainable from the TAC that the Common Law Marks on which the Secret Defendants have infringed are those aforementioned characters, and the Secret Defendants cannot reasonably argue that they are unaware of the basis of the common law trademark related claims or that they are unable to respond to the same.

For these reasons, the TAC is sufficiently pled under Rule 8 to provide notice to the Secret Defendants of the claims against them and the factual basis for those claims, and thus is not a "shotgun pleading" subject to dismissal on these grounds. The extent of the Secret Defendants' infringement on Rainbow's protected intellectual property necessitated the length of the TAC, and it cannot be reasonably

argued that the TAC is written in such a way as to deprive the Secret Defendants of their ability to understand the claims against them or to adequately formulate a response to the same. Therefore, the TAC should not be dismissed under Rule 8.

**B.    The Secret Defendants' Infringing Works are Substantially Similar to Rainbow's Episode-Related Copyrights Alleged in Counts (1-49)**

Rainbow's episode-related infringement counts are sufficiently pled, and the Secret Defendants' argument to the contrary is misplaced. A plaintiff need not allege similarities across all the noted elements—plot, themes, dialogue, mood, setting, pace, characters, and sequence of events—to survive a motion to dismiss. These elements represent the framework that federal courts use when analyzing substantial similarity under the extrinsic test, not as a pleading checklist.

Rainbow sufficiently articulates substantial similarities existing between the plot of Winx Club and the plot of the Royale High game. Both Winx Club and Royale High include a school that the fairies attend to receive training. TAC ¶ 53. These institutions in both Winx Club and Royale High share substantial visual similarities. *Id.* The make-up of the school structure, two long buildings flanking a central domed building positioned with a courtyard in the middle of the buildings. The grassy courtyard is crisscrossed with grey cement walkways through the center. The Secret Defendants directly copied this structure. Further, Rainbow sufficiently alleges that the characters in Royale High are not only substantially similar but are exact replicas of the protected characters owned by Rainbow. See TAC ¶ 43 (Royale High featuring a character also named "Bloom" with the exact same wing structure and color, outfit, hair color and length, and body composition as Rainbow's protected BLOOM character). The themes and mood of Royale High are a direct copy of Rainbow's Winx Club, and the TAC sufficiently alleged the same throughout its comprehensive and detailed account of Secret Defendants' infringing conduct.

### C.    Rainbow's Episode-Related Infringement Allegations in Counts (1-49) Do Not Assert Duplicative, Derivative Copyrights

Rainbow's claims of copyright infringement are not duplicative. The Secret Defendants classification of Rainbow's claims is misplaced. are clearly capable of understanding and analyzing the TAC, as they make a myriad of arguments on the merits and were able to specifically cite to instances where they believe that "duplicative" claims are made. A plaintiff may plead infringement based on both visual arts and performing arts copyright registrations for the same character at the pleading stage. Copyright law permits separate registrations for different embodiments of a character, and notice pleading standards require only that the complaint provide fair notice of the claims without demanding heightened specificity about which registration supports each alleged act of infringement. "Once the fact of copyright registration is alleged, courts typically do not resolve the scope of a copyright registration's coverage at the pleading stage." *In re Google Generative AI Copyright Litigation*, 809 F.Supp.3d 903, 912 (N.D. Cal. 2025); see also *AJ Mgmt. Consulting, LLC v. MBC FZ-LLC*, No. 13-cv-03213-BLF, 2014 WL 2878891, at *4 (N.D. Cal. June 24, 2014) ("[D]eciding the validity of Plaintiff's copyright registration would require the Court to make factual determinations ... that are not appropriate on a Rule 12(b)(6) motion to dismiss.")

The Copyright Act allows copyright owners to obtain separate registrations for different versions or embodiments of the same underlying work. Indeed, the statute contemplates that derivative works may receive their own copyright protection and grants copyright holders the exclusive right to prepare derivative works based upon the copyrighted work. 17 U.S.C. §§ 103(a), 106(2). A character appearing in visual form and in performing arts form represents different copyrightable embodiments that may each warrant separate registration. See *D.C. Comics v. Towle*, 802 F.3d 1012, 1016 (9th Cir. 2005).

///

In *D.C. Comics*, the Ninth Circuit recognized that a copyright owner can bring infringement claims based on both underlying works and derivative works when the same owner holds rights to both. *Id*. This is the case here, as Rainbow is the registered copyright owner of each of the copyrights which Secret Defendants have infringed upon. Rainbow's copyrights protect distinct embodiments of that copyright. Rainbow owns individual copyrights on each of the depictions of its characters, which form the basis for its various claims against Secret Defendants. For example, paragraphs 64 and 65 of the TAC, make reference to Rainbow's copyright depicting a scene from their TV series WINX CLUB. In the immediate paragraph, the Secret Defendants have taken a screen capture from the protected series and copied it directly into their Royale High game. As Rainbow owns the copyright to the series, the elements within the series, such as the still images captured by defendants, are also copyright protected, and thus infringed upon.

It is important to highlight in any case that the Secret Defendants deliberately crop the photo referenced in the TAC (TAC ¶ 43) when utilizing it in their Motion (ECF 35, p. 15) to obscure the extent of the Secret Defendants' infringement and mislead this Court. The Secret Defendants have committed a blatant infringement and thus their motion to dismiss should be denied.




(shown as cropped in Motion)

///

///

11

**D.     Rainbow's Trademark Dilution Claims (Counts 69 and 72) Are Sufficiently Pled**

Rainbow has sufficiently pled its trademark dilution claim against the Secret Defendants. Rainbow need only allege facts sufficient to state a plausible claim for relief under a theory of trademark dilution, which the TAC accomplishes. The Secret Defendants apparently do not dispute that (1) Rainbow's marks are famous and distinctive; (2) the Secret Defendants are making use of the marks in commerce; and (3) that the Secret Defendant's use of the marks began after the marks became famous. In their Motion, the Secret Defendants argue only that Rainbow has not sufficiently alleged the fourth element of a trademark dilution claim: the dilution itself. However, Rainbow alleged all elements of a dilution claim in the TAC.

The Secret Defendants' unauthorized use of Rainbow's protected marks, including the registered trademarks as well as the Common Law Marks, constitutes dilution by blurring. "Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product." *Gianni Versace, S.p.A. v. Versace 19.69 Abbigliamento Sportivo SRL*, 328 F.Supp.3d 1007, 1023 (N.D. Cal. 2018). "The theory of dilution by blurring thus protects the benefits that flow from a sharp and distinct connection between one mark and one product." *Horphag Research Ltd. v. Garcia*, 475 F.3d 1029, 1037 (9th Cir. 2007).

The TAC provides several examples of consumers' erroneous associations between Royale High's copying of Rainbow's intellectual property and Rainbow's famous Winx Club and its characters, thereby diluting the value of Rainbow's protected works (TAC ¶ 26). Additionally, the TAC specifically alleges that Royale High was originally provided to consumers under the name "Fairies and Mermaids Winx High School Beta," "also known as Winx High School" (TAC ¶ 22). The TAC provides evidence that the Secret Defendants' copying of Rainbow's works resulted in dilution and consumer confusion. For example in TAC ¶ 26, Rainbow present

12

evidence of Reddit users seeming to draw a connection between the two brands based on a perceived relationship, with users stating, "Well Royale high is kinda inspired by Winx," "…Royale High was once a game to credit Winx Club, that explains 'Enchantix High'," and "Royal high was originally kinda like Winx in roblox…" (TAC ¶ 26). These online statements prove that consumers are drawing unfounded inferences of association and confusing the sources of Rainbow's intellectual property. This is exactly what a dilution claim is intended to remedy. Furthermore, Rainbow specifically alleges that the Secret Defendants acted with deliberate intention to unfairly benefit from the good will symbolized by Winx's famous marks (TAC ¶ 1284) which, as explained above, constitutes a prima facie case for trademark dilution.

Contrary to the Secret Defendants' argument, Rainbow has alleged that the Secret Defendants' conduct resulting in dilution of the value of its protected works was willful. TAC ¶ 32, 1284, 1338. Rainbow's TAC already plausibly alleges that dilution was willful and deliberate, and therefore Rainbow's relief may include damages as well as an injunction. As more fully addressed below in Section III.H Rainbow is also not barred from seeking injunctive relief because the extent of the Secret Defendants past infringement, their refusal to license Rainbow's protected works when given the opportunity to do so, the constant development of the Royale High game, and notices to Rainbow from consumers even after all infringing content had allegedly been taken down, provides more than adequate grounds for Rainbow to seek injunctive relief. Without an injunction the Secrets Defendants will likely continue to cause dilution of Rainbow's protected works.

E.    **Rainbow's Trademark Infringement Claims Are Sufficiently Pled**

"When the owner of a trademark has spent conside[r]able time and money bringing a product to the marketplace, trademark law protects the producer from pirates and counterfeiters." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 784 at fn. 19 (1992) (Stevens, J., concurring). The Secret Defendants have acted akin to

13                                                          CASE NO.: 5:25-0597-
                                                                      MRA(DTBX)

pirates and counterfeiters in their unauthorized use of Rainbow's protected trademarks. The Secret Defendants nowfeign an inability to understand the detailed TAC in an attempt to escape liability. Rainbow has adequately pled that (1) it has protectable ownership interests in its registered and common law trademarks, and (2) that the Secret Defendants' use of the marks is likely to cause and has indeed caused consumer confusion. Therefore, the TAC is facially sufficient and should not be dismissed on these grounds.

### 1. Rainbow Adequately Alleged Infringement of its Registered Trademarks

Rainbow sufficiently alleges infringement on its registered trademarks, United States Trademark Registration Nos. 3,258,932; 3,376,208; and 6,182,163 (TAC ¶ 33) arising out of, *inter alia*, the Secret Defendants' use of "Winx" in its first-version game title ("Fairies & Mermaids Winx High School"). TAC ¶ 22. This infringement was specifically calculated to manipulate and divert fans of Winx Club by creating a false relationship between the later re-named Royale High game and the Winx Club series. It is clear that infringement of Rainbow's federal trademarks occurred because Secret Defendants' original use of the word "WINX" in connection with their Roblox online game services is confusingly similar to Rainbow's WINX CLUB mark for electronic games services provided by means of the internet under international class 41. Indeed, Rainbow also sufficiently alleges that reasonable consumers were likely to and as a result of this duplicitous behavior, were indeed confused by the Secret Defendants' unauthorized use of Rainbow's registered trademarks. See TAC ¶¶ 23, 26, 27.

Furthermore, a defendant's voluntary cessation of infringing activity does not deprive the court of jurisdiction to hear the case or eliminate the trademark owner's right to recover damages and profits for the period where infringement occurred. *E. & J. Gallo Winery v. Consorzio del Gallo Nero,* 782 F. Supp. 457, 468 (N.D. Cal. 1991).. For the period when infringement actually occurred after the registration, a

plaintiff can recover both the defendant's profits from the infringement and its own actual damages under 15 U.S.C. section 1117(a). *Romag Fasteners, Inc v. Fossil, Inc.*, 590 U.S. 212, 213 (2020).. Thus, Rainbow's claims based on its registered trademarks are not deficient and the TAC adequately alleges infringement on its registered trademarks such that the Secret Defendants are on notice of their wrongful conduct at issue.

2.    **Rainbow's Common Law Trademark Theory Meets the Threshold Pleading Requirements**

As a threshold matter, as discussed in Section III.A(iii), Rainbow's allegations regarding its common law trademarks and the images provided in conjunction more than adequately describe and identify Rainbow's common law marks. To establish common law trademark rights in a geographical area, a party must be the first to use the name in commerce to designate the pertinent products in that area and must continue to use the name in that area. *Fleischer Studios, Inc. v. A.V.E.L.A., Inc.,* 654 F.3d 958, 966–67 (9th Cir. 2011).

The facts and allegations enumerated in Rainbow's TAC provide the Secret Defendants with the requisite notice of Rainbow's claims and sufficient detail to identify the common law marks associated with each of its Winx Club characters. Rainbow further offers numerous photographic examples of the Secret Defendants' copying of and infringement on the same. See TAC ¶¶ 43, 53, 62, 65, 74, 78, 82, 87, 89, 92, 101, 104, 107, 110, 116, 120, 123, 126, 130, 133, 139, 145, 149, 153, 156, 159, 161, 164, 167, 170, 176, 177.

The Secret Defendants unsurprisingly attempt to establish that their blatant copying and misappropriation of Rainbow's trademarks leaves Rainbow without remedy because Secret Defendants may hide behind the First Amendment and the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ("*Rogers*"). The Secret Defendants ask the Court to assume that their unauthorized use of Rainbow's protected works is entitled to First Amendment protection. As explained below, the

Secret Defendants' arguments are misplaced and inapplicable here.

### 3.    Rogers Is Inapplicable

The Supreme Court's decision in *Jack Daniel's Props. v. VIP Prods.*, 599 U.S. 140 (2023) has considerably narrowed the application of the *Rogers* test. After *Jack Daniel's Props.*, the *Rogers* test "is not appropriate when the accused infringer has used a trademark to designate the source of its own goods—in other words, has used a trademark as a trademark." *Haas Automation, Inc. v. Steiner*, 750 F.Supp.3d 1107, 1116 (C.D. Cal. 2024) (explaining that *Rogers* does not apply "when an infringer uses a trademark in the way the Lanham Act most cares about: as designation of source for the infringer's own goods," even if the use has expressive content or conveys a message). Whether a mark functions as a source identifier is a question of fact that focuses on how the mark is used in the marketplace and how it is perceived by customers. *In re GO & Associates, LLC*, 90 F.4th 1354, 1356 (Fed. Cir. 2024).

Moreover, when a mark is used primarily for commercial purposes rather than artistic expression, *Rogers* protection should not apply. *Hermes International v. Rothschild*, 654 F.Supp.3d 268, 275 (S.D. Ny. 2023). *Rogers* itself distinguishes between commercial speech and artistic expression, explaining that commercial speech is intended primarily to "persuade the public to consume something that either had no connection to the plaintiff [ ] or to convey the false impression that the plaintiff was somehow involved with or endorsed the product." *Rogers*, 695 F.Supp. at 120.

Because Rainbow's common law marks are blatantly copied and pasted in Royale High as wall décor, these marks are utilized by the Secret Defendants as a source identifier. TAC ¶¶ 65, 74, 78, 82, 87, 89, 92, 101, 104, 107, 110, 116, 120, 123, 126, 130, 133, 139, 145, 149, 153, 156, 159, 161, 164, 167, 170. Furthermore, the infringement of Rainbow's trademarks is for a commercial purpose, removing it from the protection of purely artistic expression. The Secret Defendants made use of the WINX marks in order to profit off of the goodwill built up by Rainbow and divert

revenue into their own pockets. As noted in the TAC, Roblox uses in-game purchases and the Secret Defendants relied on consumers unwittingly purchasing their products instead of Rainbow's. Even more, the Secret Defendants entered into a master toy agreement in 2023 to continue their cash grab from the characters, logos, and designs employed by Rainbow in its own universe of Winx Club. TAC ¶ 28. The Secret Defendants thereby attempt to confuse consumers and create an association in the consumer's mind between Royale High and Winx Club, one which has never existed. the TAC alleges Defendants used WINX in the original game title 'Fairies & Mermaids Winx High School' and display of copied characters within Royale High to attract and monetize users, and later enter a master toy agreement— all commercial uses which function as source identifiers, not incidental artistic references. This use makes *Rogers* inapplicable. Furthermore, holding the Secret Defendants liable for their outright theft of Rainbow's protected works would not have a chilling effect on the free expression of creative ideas, a central concern of the court in *Rogers*. *Rogers*, 695 F.Supp. at 120.

Commercial speech in this context is not subject to speech-protective test articulated in *Rogers*, but rather the *Gruner + Jahr* test, focusing on whether "a defendant's use of something akin to plaintiff's trademark confused consumers as to the source of the work or product." *Hermes International*, 654 F.Supp. at 266. As explained through the TAC and this Opposition, the Secret Defendants' copying of Rainbow's protected works is very likely to confuse and indeed has confused consumers as to Rainbow's involvement with the development and commercialization of Royale High. Therefore, the Secret Defendants cannot claim that their use of Rainbow's marks is protected creative expression because

### F.    Count 68 Should Not be Dismissed Because Rainbow Properly Alleges Fraudulent Conduct and is Entitled to Injunctive Relief

Rainbow's unfair competition claim is sufficiently pled. The TAC adequately alleges fraud to the extent possible with the information currently available to

Rainbow and those fraud allegations—based in good faith that the conduct complained of in the TAC was committed by the Secret Defendants—is sufficient to entitle Rainbow to relief in the form of both damages and an injunction.

### 1. Rainbow Alleges Fraud with Sufficient Particularity

Under the UCL's fraudulent prong, a "fraudulent" business practice is "one that is likely to deceive members of the public…judged by the effect it would have on a reasonable consumer." *Nia v. Bank of America, N.A.*, 603 F.Supp.3d 894, 909 (S.D. Cal. 2022). This standard is "defined more broadly than common law fraud and only requires a showing that members of the public are likely to be deceived." *Multimedia Patent Trust v. Microsoft Corp.*, 525 F.Supp.2d 1200, 1217 (S.D. Cal. 2007). The Secret Defendants entered into a license agreement, in the hopes to capitalize off of the goodwill Rainbow created. The TAC pleads this.

Rainbow details its discovery of and attempt to address the Secret Defendants' infringement on its intellectual property specifically through TAC paragraphs 21, 23, 25, 28, 30, 31, and 32. Rainbow alleges that reasonable consumers have actually been confused by the Secret Defendants decision to copy Rainbow's protected works and pass them off as their own. Continued confusion among reasonable consumers is also likely. TAC ¶¶ 26, 27, 1261. The TAC includes enough detail and specificity to put the Secret Defendants on notice of the conduct charged.

Importantly, "[o]ne theory of UCL liability may sound in fraud while another does not." *Kisting-Leung v. Cigna Corporation*, 780 F.Supp.3d 985, 1008 (E.D. Cal. 2025). Only allegations of fraud are subject to Rule 9(b)'s heightened pleading requirements. *Id*. While the Secret Defendants move for dismissal of Count 68, and even though the allegations of their fraudulent business practices under the UCL have been adequately pled, Secret Defendants ignore two sections of Rainbow's UCL claim contained in Count 68: unlawful and unfair business practices. These claims are subject only to the pleading requirements of Rule 8(a) and, as discussed at length in Section III.A above, Rainbow readily meets that pleading standard.

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

**2.      Rainbow's Sufficient Fraud Allegations Entitle it to Recover Both Damages and Injunctive Relief**

Because Rainbow's theory of fraudulent business practices against the Secret Defendants is both plausible and sufficiently pled, Rainbow will be entitled to damages if it prevails on the merits of Count 68. Furthermore, as discussed in detail below in Section III.H, Rainbow has met the threshold pleading requirements establishing that it has standing and sufficient grounds to request a permanent injunction.

**G.      Counts 14 and 16 Contain Adequate Factual Allegations of Infringement**

Rainbow is the sole owner of United States Copyright Registration No. PA0002519603, a motion picture work, which is properly registered with the United States Copyright Office. When an audiovisual work is copyrighted, the registration protects "all copyrightable component parts of the work." See *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 976 (9th Cir. 2008). As the TAC alleges that the Secret Defendants directly copied an element of a registered copyright, a viable claim arises. The factual allegations contained in the TAC are sufficiently plead, as the character appearing in the work, Stella, is a constituent element of the registrations owned by Rainbow. Therefore, the constituent elements of Rainbow's copyright protected work under Registration No. PA0002519603 are protected.

In Count 14 of the TAC, Rainbow properly alleges copyright infringement under 17 U.S.C. §§ 101 et seq. One constituent elements of this copyright in Count 14 is the character Stella. As alleged in the TAC, the Secret Defendants infringed this copyright by copying a depiction of Stella into their Royal High game. The TAC provides adequate visual evidence of this allegation, especially considering the current pleading stage of this litigation. The same argument is made for Count 16, which also covers audiovisual work, Registration No. PA0002519638, owned by

19                          CASE NO.: 5:25-0597-MRA(DTBX)

Rainbow. These registrations secure federal statutory copyright protection, which the Secret Defendants have violated. Considering the evidence presented, Counts 14 and 16 have been adequately plead and should withstand any motion to dismiss brought by the Secret Defendants.

### H.    Rainbow is Entitled to Injunctive Relief for Its Counts

As addressed above, Rainbow possesses Article III standing for injunctive relief because there exists both a real and immediate threat of continued infringement by the Secret Defendants. "At the pleading stage, general factual allegations which show that the plaintiff has standing are sufficient to meet this burden." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1180 (9th Cir. 2016)..

The key principle here is that a showing of past infringement coupled with a substantial likelihood of future infringement justifies issuing a permanent injunction. *Sega Enters. Ltd. v. MAPHIA,* 948 F. Supp. 923, 940 (N.D. Cal. 1996). The fact that a defendant claims to have stopped infringing "is generally not a reason for denying an injunction against future infringement unless the evidence is very persuasive that further infringement will not take place." *Canon, Inc. v. Color Imaging, Inc.,* 292 F.Supp.3d 1339, 1349 (N.D. Ga. 2018). Courts employ a totality of the circumstances analysis, including whether the defendant ignored cease-and-desist demands or continued selling infringing products after notice of infringement. See *Tools Aviation, LLC v. Digital Pavilion Electronics LLC*, 797 F.Supp.3d 222, 236 (E.D. Ny. 2025). Furthermore, Defendant had reason to know of the infringement, leading to imposed liability. *Rearden, LLC v. Walt Disney Pictures*, 152 F.4th 1058, 1068 (9th Cir. 2025)

The dilution of Rainbow's protected intellectual property constitutes an injury in fact that forms the basis for Rainbow's claims against the Secret Defendants. Indeed, the TAC includes adequate factual allegations regarding the need for an injunction against the Secret Defendants' continued infringement, and the Secret Defendants' argument on this point purposefully mischaracterizes the facts.

ClarkHill\M5070\486618\286882432.v2-3/26/26

In May 2023, Rainbow was first made aware of the unauthorized use and sale of its protected works. TAC ¶ 24. After notifying Roblox of the infringement by Royale High, Roblox *claimed* to have removed specified contents. TAC ¶ 26. Less than a month after that communication, however, a Winx Club fan alerted Rainbow to additional unauthorized Winx Club works discovered within the Royale High game. *Id*. Rainbow again contacted Roblox on March 21, 2024, stating that it still believed the Royale High owners and developers were continuing to infringe on Rainbow's protected works. TAC ¶ 29. Nowhere in the TAC does Rainbow allege that it received responses from Roblox.

Further, Rainbow contacted Defendants Starline and Ndalamba on March 4, 2024, as they appeared to be among the owners and developers of Royale High, demanding that they remove the infringing content or enter into a licensing agreement. TAC ¶ 30. Defendants Starline and Ndalamba responded four days later, denying the infringement and refusing to remove any identified infringing materials or to enter into a licensing agreement with Rainbow related to Royale High. *Id*. Therefore, the TAC allegations make clear that, as of March 8, 2024, infringing content was still available to consumers through the Royale High game, and at least one owner/developer of Royale High expressly refused to remove the infringing content, making them both directly and vicariously liable for copyright infringement. This lack of response gives rise to a real and immediate threat of recurrence, warranting injunctive relief.

Again, Rainbow lacks specific information regarding the exact division of responsibilities and creative control of the development and commercialization of Royale High – Rainbow knows only that all Defendants (Starline, Ndalamba, Secret Waterfall LLC, Devault, and Uhrich) together developed the Royale High game. Thus, it is sufficient to allege that Rainbow reasonably believes that infringement on its protected works continues to date. Only this Court is in a position to stop the infringement through an injunction against all Defendants.

21

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

ClarkHill\M5070\486618\286882432.v2-3/26/26

Furthermore, the Secret Defendants' argument that Rainbow is not entitled to injunctive relief is not properly brought at the pleading stage. See *In re Lloyd's American Trust Fund Litigation*, 954 F.Supp. 656, 682 (S.D. Ny. 1997) ("a claim for permanent injunctive relief should not ordinarily be dismissed at the pleadings stage"). Injunctive relief is a remedy, not a cause of action subject to a motion to dismiss. *Kanfer v. Pharmacare US, Inc.*, 142 F. Supp. 3d 1091, 1107 (S.D. Cal. 2015). Therefore, Rainbow's request for injunctive relief should be granted.

## IV.   CONCLUSION

For the foregoing reasons, the Secret Defendants' Motion to Dismiss the Third Amended Complaint should be denied in its entirety. In the alternative, were the Court to find that any part of Rainbow's TAC deficient, Rainbow respectfully requests that the Court permit Rainbow leave to amend the TAC to correct any such deficiencies.

Dated: March 26, 2026                    CLARK HILL LLP

By: _____
Bradford G. Hughes

Attorneys for Plaintiff RAINBOW S.p.A

CASE NO.: 5:25-0597-MRA(DTBX)

OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT

ClarkHill\M5070\486618\286882432.v2-3/26/26

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff Rainbow S.p.A, certifies that this brief contains 6,809 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 26, 2026                    CLARK HILL LLP


By: _____
                   Bradford G. Hughes

Attorneys for Plaintiff RAINBOW S.p.A